**NORTHWEST HOSPITAL, INC.,**
**Plaintiff-Appellee,**

v.

**HOSPITAL SERVICE CORP., Blue Cross Association, Patricia Harris, Secretary of Health and Human Services, Defendants-Appellants.**

No. 80–2857.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1981.

Decided Aug. 25, 1982.*

---

* This opinion has been circulated among all active judges of this court pursuant to Circuit Rule 16(e). No judge favored a rehearing in banc with regard to the arguable conflict between this opinion and the Ninth Circuit's decision in *Goleta Valley Community Hospital v. Schweiker*, 647 F.2d 894 (9th Cir. 1981).

Stephen B. Weiss, Health Care Financing Div., Baltimore, Md., for defendants-appellants.

Carl P. Clavelli, Sherman C. Magidson, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

This case involves the proper treatment, under the Medicare program, of interest payments made by a non-profit Medicare provider to three individuals affiliated with the provider. The Secretary of Health and Human Services (the "Secretary") disallowed these payments on the grounds that the applicable Medicare regulations prohibited reimbursement for all interest incurred on "indebtedness established with lenders or lending organizations[ ] related through control, ownership, or personal relationship to the borrower." 42 C.F.R. § 405.419(c) (1976). The provider appealed to the district court, which reversed in part. For the reasons stated below, we affirm the judgment of the district court.

I

This case arises under Title XVIII of the Social Security Act (the "Act"), which established the federally funded health insurance program commonly known as "Medicare." 42 U.S.C. § 1395 et seq. (1976). Part A of the Medicare program, which is funded out of social security taxes, provides "hospital insurance" for the aged and certain disabled individuals. Under Part A, the federal government reimburses eligible hospitals, nursing facilities, and home health agencies for the "reasonable costs" of covered services provided to Medicare beneficiaries in accordance with a Congressionally established scheme. 42 U.S.C. § 1395d (1976).

A hospital may become a Medicare provider, and thus become eligible for federal reimbursement, by filing an agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1395cc. Medicare providers are reimbursed for their services either by the Secretary or, more commonly, by certain private organizations acting as fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. § 1395h. As part of their fiscal responsibilities, these intermediaries are required to ascertain the amount of reimbursement which accurately reflects the "reasonable cost" of the Medicare services provided by an eligible health care institution. A final calculation as to reimbursable costs is made annually, at the close of the provider's fiscal year, and is based upon a "cost report" that each provider is required to file. 42 C.F.R. § 405.-406(b).

Upon receipt of a provider's cost report, the fiscal intermediary is required to analyze the reported data, undertake any necessary audits and inform the provider, through a written Notice of Program Reimbursement, of the amount of Medicare reimbursement to which it is entitled. 42 C.F.R. § 405.1803. If the provider is not satisfied with this determination, and the total amount in controversy is at least $10,-000, the provider may request a hearing before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. Within 60 days after a PRRB decision, the Secretary, on her own motion, may reverse, affirm or modify that decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to the applicable provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the provider may then seek review of the agency's final decision in federal district court. 42 U.S.C. § 1395oo(f)(1).

Plaintiff-appellee Northwest Hospital became a participating Medicare provider on July 1, 1966. At that time, Northwest Hospital was a for-profit corporation with three stockholders. Prior to the date on which Northwest Hospital became a Medicare provider, the three stockholders had begun the process of transforming Northwest Hospital from a for-profit to a not-for-profit corporation. In an effort to obtain not-for-profit status, these three individuals, together with four other persons, formed a new corporation in early 1966. On January 27, 1966, these seven trustees of the new corporation authorized the execution of a purchase agreement for all outstanding stock of Northwest Hospital. The purchase price was to be $5,000,000, of which $100,000 would be cash, with the balance to be financed by the issuance of unsecured subordinated 15-year promissory notes payable to the three stockholders of the old for-profit corporation, with interest at 4% per annum. The purchase agreement was also conditioned on the new corporation's receiving a favorable ruling on its request for tax exempt status.

On December 20, 1967, plaintiff-appellee was notified of a favorable ruling from the Internal Revenue Service on its request for tax exempt status. On December 27, 1967, the new corporation, by its Board of Trustees, authorized the purchase of the old for-profit hospital on the terms described above. By January 2, 1968, the new corporation had acquired the stock of Northwest Hospital, liquidated the former hospital corporation and begun business as a non-profit institution. The new corporation, however, continued to use the name "Northwest Hospital," and retained essentially the same management structure as the former for-profit corporation.

In its cost report for the reporting period ending April 30, 1974, Northwest Hospital included among its eligible Medicare costs depreciation expenses based upon the five million dollar purchase price of the former for-profit hospital. In addition, Northwest Hospital included among its reimbursable expenses, interest payments made on the 15-year promissory notes used to finance that purchase. Hospital Service Corporation, the fiscal intermediary responsible for monitoring Northwest Hospital's Medicare expenses, objected to these and several other cost items. On February 12, 1976, the PRRB held a hearing on the issues that were still in dispute between the provider and the intermediary.[1] On March 30, 1976, the PRRB rendered its decision on the two issues relevant to this appeal as follows:

*Issue No. 1*

The Provider is not entitled to depreciation expenses based on the fair market value of the assets of the former Provider. Rather the depreciation expense must be based on the historical cost of the assets to the former Providers.

*Issue No. 2*

The Provider is entitled to deduct interest expense on the notes that were given in exchange for the stock of the former Provider, but only to the extent they apply to the historical costs of the assets to the former Provider and not the interest expense on the full amount of the notes as claimed by the Provider.

On May 28, 1976, the Commissioner of Social Security,[2] affirmed the PRRB's resolution of Issue # 1, but ruled, on Issue # 2, that Northwest Hospital was not entitled to reimbursement for *any* of the interest paid to the three former stockholders of the for-profit hospital. The Commissioner based his decision, in part, on 45 C.F.R. § 405.419(c), which provides that to qualify as an allowable Medicare cost,

interest expense must be incurred on indebtedness established with lenders or lending organizations not related through

1. Although four issues were involved at the administrative and district court levels, only Issue # 2 (interest expense) has been presented to this Court for review. Issues # 3 and # 4 have no bearing on the interest issue and will not be discussed. Issue # 1, allowable depreciation expense, is not technically before this Court but must be discussed because of its relationship to the interest issue.

2. To whom the Secretary had delegated his authority to review decisions of the PRRB.

control, ownership, or personal relationship to the borrower. . . . Thus, interest paid by the provider to partners, stockholders, or related organizations of the provider would not be allowable. . . .[3]

The Commissioner found that the current provider and the former for-profit stockholders were "related parties" within the meaning of this and other Medicare regulations and, therefore, that no portion of the interest payments qualified as a reimbursable Medicare expense.

Northwest Hospital appealed the agency's final decision to the United States District Court for the Northern District of Illinois. In an opinion issued October 29, 1980, the district court approved the agency's conclusion that the plaintiff and the former for-profit stockholders were related parties at the time the transaction at issue took place. As a result, the court ruled that Northwest Hospital was obligated to use the historical cost of the hospital's assets to the former for-profit stockholders, rather than the $5,000,000 purchase price, as a basis for calculating depreciation.[4] However, the district court reversed the agency's final decision with respect to the proper treatment of the interest incurred on the 15-year promissory notes, and allowed Northwest Hospital to be reimbursed for interest on that portion of the loan attributable to the historical cost of the former hospital's assets:

To parallel the treatment already approved for depreciation, the allowable amount of the loan should be treated as the excess of Northwest I's depreciated historical cost over the $100,000 paid in cash when the transaction was closed. *Interest is allowable on that excess at the 4% rate under Section [42 C.F.R.] 405.-419(a). To that extent Section [42 C.F.R.] 405.419(c) is unreasonable and invalid as applied to this case*, and to the same extent defendants' motion for summary judgment is denied.

Dist.Ct. Opinion, 500 F.Supp. 1294, at 1299 (emphasis supplied).

In this appeal the government challenges only the district court's resolution of the interest expense issue, arguing that the Commissioner of Social Security was correct in disallowing *all* of Northwest Hospital's claimed interest payments. Northwest Hospital has not cross-appealed on either issue.

## II

Title XVIII of the Social Security Act entitles Medicare providers to reimbursement for all "reasonable costs" allocable to the care of Medicare patients. 42 U.S.C. § 1395f(a) (1976). Section 1395x(v)(1)(A) of the Act defines "reasonable cost" and authorizes the Secretary to promulgate regulations governing the methods to be used and items to be included in determining such costs for various classes of institutions, agencies and services.[5] In

---

**3.** The Commissioner also relied on 42 C.F.R. § 405.419(b)(2), which provides that interest incurred on loans which result in excess funds or investments is not reimbursable. The Commissioner reasoned that the notes in question were used to purchase capital stock in the former for-profit corporation, rather than to buy the hospital itself, and that such "investment loans" were not considered "necessary" for the purpose of Medicare reimbursement. The government, in this appeal, does not rely on this rationale as a ground for disallowance, and we do not address it here.

**4.** The district court based this conclusion on its interpretation of 45 C.F.R. § 405.415(q), which governs the assignment of an appropriate cost basis for calculating depreciation on an ongoing medical facility purchased by a Medicare

provider. Subpart three of that regulation provides:

(3) *Transactions other than bona fide.* If the purchaser cannot demonstrate that the sale was bona fide, in addition to the limitations specified in paragraphs (g)(1) and (2) of this section, the purchaser's cost basis shall not exceed the seller's cost basis, less accumulated depreciation.

After reviewing the relevant statutory and regulatory provisions, the district court concluded that the term " 'bona fide,' when viewed in the context of the statute and its regulations, includes the concept of unrelatedness." Dist.Ct. Opinion at 7 (footnote omitted). Northwest Hospital does not challenge this aspect of the district court's decision.

**5.** Section 1395x(v)(1)(A) provides, in pertinent part:

determining the reasonable costs for which a Medicare provider is entitled to be reimbursed, the Secretary must take into account both a provider's direct and indirect costs, and may not cause costs properly allocable to the care of Medicare patients to be shifted to non-Medicare patients. *St. John's Hickey Memorial Hospital, Inc. v. Califano*, 599 F.2d 803, 808 (7th Cir. 1979); 42 U.S.C. § 1395x(v)(1)(A). Moreover, the cost regulations must be rational and non-arbitrary, and must further the purposes of the Medicare statute. *Medical Center of Independence v. Harris*, 628 F.2d 1113, 1118 (8th Cir. 1980); *see* 5 U.S.C. § 706(2) (1976). The statutory touchstone is the reimbursement of actual costs, both direct and indirect, found to be not unnecessary to the efficient delivery of needed health services. *Medical Center of Independence v. Harris*, 628 F.2d 1113, 1115 (8th Cir. 1980); *South Boston General Hospital v. Blue Cross of Virginia*, 409 F.Supp. 1380, 1384 (W.D.Va. 1976).

Pursuant to her authority under 42 U.S.C. § 1395x(v)(1)(A), the Secretary has promulgated detailed regulations specifying reimbursable Medicare-related costs. Section 405.419(a) of those regulations explicitly provides that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost." 20 C.F.R. 401.419(a) (1976). Indeed, the government concedes in its brief that "[i]nterest expense is a cost of providing services under the Medicare program and the regulations generally permit its inclusion on the provider's annual cost report." Appellant's Br. at 12. In order to guard against unnecessary or excessive interest claims, the Secretary has promulgated certain general criteria for identifying "necessary and proper interest." Thus, in order to qualify as "necessary," interest must (1) be incurred on a loan made to satisfy a financial need of a provid-

er; (2) be incurred on a loan made for a purpose reasonably related to patient care; and (3) be reduced by most types of investment income. 20 C.F.R. § 405.419(b)(2) (1976). In addition, to meet the definition of "proper," interest must be "incurred at a rate not in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made." 20 C.F.R. § 405.419(b)(3)(i). The government does not contend that the interest payments at issue here fail to satisfy or comply with any of these regulatory criteria.

In addition to the general criteria outlined above, however, section 405.419(b) of the regulations contains a blanket disallowance for any interest payments made by a provider to a lender "related through control or ownership, or personal relationship to the borrowing organization." 20 C.F.R. § 405.419(b)(3)(ii). Section 405.419(c) explains the justification for and scope of this exclusion:

(c) *Borrower-lender relationship.* (1) To be allowable, interest expense must be incurred on indebtedness established with lenders or lending organizations not related through control, ownership, or personal relationship to the borrower. Presence of any of these factors could affect the "bargaining" process that usually accompanies the making of a loan, and could thus be suggestive of an agreement on higher rates of interest or of unnecessary loans. Loans should be made under terms and conditions that a prudent borrower would make in arms-length transactions with lending institutions. The intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable. Thus, interest paid by the provider to partners, stockholders, or related organizations of the provider would not be allowable.

The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services .... Such regulations shall (i) take into account both direct and indirect costs of providers of services ... in order that, under the methods of deter-

mining costs, the necessary costs of efficiently delivering the covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs ....

Despite the apparent breadth of this disallowance, the regulations contain several exceptions to the general rule prohibiting reimbursement for interest incurred on related-party loans. Although these exceptions are not directly implicated in the instant case, their existence bears on the justification for, and reasonableness of, the general exclusion at issue here. Thus, under the applicable regulations, related-party interest is allowable (1) if paid on loans from a provider's donor-restricted funds, the funded depreciation account or a provider's qualified pension plan, 20 C.F.R. § 405.419(b)(3)(ii); (2) if the loans were made by partners, stockholders or related organizations prior to July 1, 1966;[6] or (3) "if a provider operated by members of a religious order borrows from the order." 20 C.F.R. § 405.419(c)(2).

Northwest Hospital concedes, for purposes of this appeal, that the interest payments made by it to the three former stockholders of the for-profit corporation fall within the literal terms of the regulatory disallowance. The hospital argues, however, that the district court was correct in concluding that "under the circumstances of this case, the total disallowance of interest urged by [the government] exceeds the statutory mandate that requires the reimbursement of reasonable costs." Dist.Ct. Opinion at 9. Northwest Hospital therefore urges that we affirm the district court's invalidation of Section 405.419(c), at least as applied to loans incurred by a hospital for the purpose of converting from a profit to a non-profit institution. The government, by contrast, contends that the exclusion of interest on all related-party transactions is a permissible prophylactic measure, rationally related to the government's legitimate interest in prohibiting excessive Medicare reimbursement. The government argues strenuously that the district court, in invalidating the regulation as applied to this case, failed to give sufficient deference to the Secretary's interpretation of the statute,

particularly in light of the statutory directive found in 42 U.S.C. § 1395x(v) authorizing the Secretary to elucidate the concept of reasonable cost. *See Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). Citing *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1964) and *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the government urges that the Secretary's interpretation be upheld "even though it may work an inequitable result in a particular case," because a broad prophylactic rule is necessary "to avoid the near impossibility of scrutinizing each such loan to determine its legitimateness." Appellant's Br. at 21, 15.

We agree with the government that our scope of review of the challenged regulation is limited. We are not empowered to overrule the Secretary's interpretation merely because it does not coincide with our notion of "reasonable cost," or because we might have interpreted the statute in a different manner. *See Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). However, as the Ninth Circuit recently noted in the context of Medicare reimbursement,

> [W]e would be abdicating our judicial responsibility if we were to pass on the propriety of the Secretary's interpretation without subjecting it to some degree of scrutiny. As where courts review an agency's construction of a statute which the agency administers, "the deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia ...." Even though the Medicare reimbursement area is complex, and to a great degree left to the Secretary to structure, his interpretations are nonetheless subject to our examination.

*Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123, 131 (9th Cir. 1980) (citations and footnotes omitted).

---

**6.** Interest on loans to providers by partners, stockholders, or related organizations made prior to July 1, 1966, is allowable as cost, provided that the terms and conditions of

payment of such loans have been maintained in effect without modification subsequent to July 1, 1966.
20 C.F.R. § 405.419(c)(2).

In addition, several specific factors militate against according the Secretary's interpretation the extreme deference urged by the government in this case. First, unlike the statutes involved in *Batterton* and *Salfi*, the Medicare statute specifically circumscribes the Secretary's discretion to define reasonable costs by requiring the Secretary to take into account both direct and indirect costs and by prohibiting her from causing costs properly allocable to Medicare patients to be borne by non-Medicare patients. *St. John's Hickey Memorial Hospital v. Califano*, 599 F.2d 803, 813 (7th Cir. 1979); 42 U.S.C. § 1395x(v)(1)(A). Moreover, "the statute specifically creates the right to judicial review of the Secretary's adverse ruling on what costs are reimbursable, thus reserving to the courts the final authority to interpret this aspect of the statute." *St. John's, supra*, 599 F.2d at 813. *See Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123, 131 (9th Cir. 1980).

Second, it appears that the Secretary has not consistently interpreted the challenged regulation to prohibit reimbursement for interest on all comparable related-party loans. Thus, in *Doctor's Hospital of San Diego v. Blue Cross of Southern California*, CCH Medicare and Medicaid Guide ¶ 29,599 (PRRB Hearing Dec. No. 79–D2, Jan. 10, 1979) a not-for-profit provider purchased land and buildings from an organization which had formerly leased the land and buildings to the provider. The provider claimed depreciation and interest expense computed on the sales price of the land and buildings. The Intermediary (Blue Cross of Southern California) determined that the parties were related by common control; it therefore eliminated depreciation on the stepped-up basis of the transferred assets and disallowed interest to Doctor's Hospital on the excess of the sales price over the historic value of the assets to the related organization.

Doctor's Hospital then sought a hearing before the PRRB. The sole issue before the PRRB involving depreciation and interest expense was whether the provider was related by common control to the former leasing corporation. All parties were in apparent agreement that the regulatory provisions governing depreciation were equally applicable to interest expense. As a result, when the PRRB held that the parties *were* related by common control, it entered a ruling similar to that adopted by both the PRRB and the district court in the instant case, limiting reimbursable depreciation and interest to an amount based on the seller's net book value.

The Administrator for the Health Care Financing Administration reviewed the decision of the PRRB relating to Doctor's Hospital on behalf of the Secretary pursuant to 42 U.S.C. § 1395oo(f). Although the Administrator modified a portion of the decision not relevant to this appeal, he reaffirmed the interest determination of the PRRB, upholding reimbursement for interest on the amount of the loan equal to that allowed for depreciation purposes, that is, on the cost of the assets to the former lessor.[7] *See HCFA Administrator Decision* CCH Medicare and Medicaid Guide ¶ 29,637 (March 19, 1979). The existence of such a prior inconsistent interpretation of the challenged regulatory disallowance detracts substantially from the deference normally due an agency's interpretation of its own statute and regulations. *See North Haven Board of Education v. Bell*, —— U.S. ——, —— n.12, 102 S.Ct. 1912, 1918 n.12, 72 L.Ed.2d 299 (1982); *General Electric Co. v. Gilbert*, 429 U.S. 125, 142–43, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1977).[8]

**7.** Reimbursement to Doctor's Hospital for depreciation and interest in subsequent years has been computed according to this same formula. *See Doctor's Hospital v. Blue Cross of California*, CCH Medicare and Medicaid Guide ¶ 30,-952 (PRRB Dec. No. 81–D22, Feb. 27, 1981).

**8.** The government, in its Reply Brief, argues that the interest payments at issue in *Doctor's*

*Hospital* were not made between related parties and, thus, that the agency's decision to allow reimbursement in that case is not inconsistent with its treatment of Northwest Hospital here. We reject this hypertechnical reading of *Doctor's Hospital.* In particular, we note that the Administrator of the Health Care Financing Administration specifically found that Doctor's Hospital was related to *both* the for-

■ Third, it is well settled that courts are obligated to interpret a statute in a manner which avoids potential constitutional infirmities. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533 (1979); *United States v. Rumely*, 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953). The same principle applies equally to administrative regulations. *Trustees of Indiana University v. United States*, 618 F.2d 736, 740 (Ct.Cl. 1980). As noted above, section 405.419(c)(2) of the Medicare regulations explicitly allows reimbursement for interest payments made to a religious order by a provider affiliated with that order. "Denying reimbursement of interest payments by a nonprofit hospital to its [former owners] while permitting reimbursement of payments to an affiliated religious order would raise serious questions under the first amendment which generally prohibits the government from giving special favored treatment to a religious entity." *Trustees of Indiana University v. United States*, 618 F.2d 736, 740 (Ct.Cl.1980); *See generally Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973). The interpretation of the regulatory disallowance adopted by the district court avoids this problem.

■ With these considerations in mind, we turn to an examination of the particular regulation challenged here. Although we do not question, as a general matter, an agency's authority to adopt prophylactic regulations reasonably designed to combat potential abuse or to avoid the difficulty of multiple individual determinations,[9] we believe that the blanket disallowance of related-party interest expense contained in section 405.419(c) is broader than either the language or the purpose of the Medicare

statute can be construed to authorize. As the government concedes, interest expense is generally considered to be part of the "reasonable cost" of providing Medicare services. Moreover, although the government contends that such a blanket disallowance is an appropriate means of insuring the legitimacy and commercial reasonableness of related-party loans, we believe that these concerns are adequately addressed by the general regulatory criteria for "necessary" and "proper" interest contained in 20 C.F.R. § 419(b)(2) and (3)[10]. The existence of such general criteria, against which all claimed interest expenses must presumably be scrutinized, also undercuts the government's argument that the absence of a blanket disallowance will necessitate significant additional administrative effort and expense. Further, we believe the Secretary, if she deems it administratively desirable, could easily designate more specific and objective "benchmark" rates against which the propriety of related-party interest could be measured.

In addition, application of the related-party disallowance to the loan transaction involved in this case is inconsistent with the rationale offered for the regulation. 20 C.F.R. § 405.419(c) provides that "[t]he intent of this provision is to assure that loans are legitimate and needed, and that the interest rate is reasonable." In the instant case, it is undisputed that the loan in question was made for the legitimate purpose of transforming Northwest Hospital from a for-profit to a not-for-profit institution, and that the interest rate of 4% per annum was substantially below the then prevailing market rate.[11] Indeed, counsel for Northwest Hospital indicated at oral argument that had the Hospital been aware that its interest payments would be disallowed, it

---

mer leasing corporation *and* the City of San Diego, on whose behalf the interest payments were made.

9. *See Weinberger v. Salfi*, 442 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522 (1975).

10. *See* pages 988–989, *supra*.

11. Here, of course, the contract sale price of the hospital was substantially higher than its

cost, although the interest rate payable on that sale price was substantially below the market rate. Under our analysis, interest is reimbursable only on the original cost of the hospital, thus eliminating any unwarranted advantage which might result from the (high principal-low interest) structure of the related-party transaction.

would have attempted to finance the transaction through a commercial lender, which would undoubtedly have charged a much higher rate of interest than the 4% accepted by the former stockholders. Such third-party financing, of course, would have resulted in a much higher cost to the government than if the expenses disallowed here are reinstated, since commercial interest expense clearly qualifies as a reimbursable Medicare cost. *See* 20 C.F.R. 405.419(a) and (b) (1976).[12]

In support of its blanket disallowance of related-party interest, the government relies heavily on several other regulatory provisions dealing with related-party transactions, as well as on a number of court decisions upholding those provisions. A close examination of these decisions, however, reveals that they detract from rather than support the government's position. In *Medical Center of Independence v. Harris*, 628 F.2d 1113 (8th Cir. 1980) and *Fairfax Hospital Association, Inc. v. Califano*, 585 F.2d 602 (4th Cir. 1978), the Eighth and Fourth Circuits, respectively, rejected providers' challenges to Section 405.427 of the Medicare regulations, which limits the reimbursement of costs incurred for the purchase of services, facilities and supplies from related organizations. *See also American Hospital Management Corp. v. Harris*, 638 F.2d 1208 (9th Cir. 1981); *Pasadena Hospital Association v. United States*, 618 F.2d 728, 732–34 (Ct.Cl.1980). Section 405.-427(c)(2) provides that where a provider obtains services, facilities, or supplies from an organization related to the provider through common ownership or control, reimbursable cost shall be limited to the cost of those items to the supplying organization.[13] Section 405.427(d), however, contains an exception to these cost limitations where a provider can demonstrate, *inter alia*, that the supplying party is a bona fide

separate organization; that a substantial part of the supplier's business is transacted with parties other than the provider; and that the charge to the provider is in line with the cost of such items on the open market and is no higher than the prices charged by the supplier in question to other comparable customers.

The Eighth Circuit, in *Medical Center of Independence*, held that such a cost limitation was consistent with the language and purpose of the Medicare statute, in that it

serves to screen out both costs not actually incurred and unreasonable costs. That is to say, the regulation precludes reimbursement for cost increases due solely to transactions between different parts of a single economic unit, and it polices "sweetheart" contracts with suppliers that may inflate costs to the provider.

628 F.2d at 119 (footnotes omitted). The Fourth Circuit, in *Fairfax Hospital Association*, reached a similar conclusion; in addition, it relied heavily on the exception contained in section 405.427(d) to sustain the regulation:

In considering the Regulation as a reasonable effort to achieve [the purpose of preventing abuse through non-competitive, exclusive purchase and sale arrangements] it is also important to note the restraint with which it is phrased in order to avoid the possibility of unfairness in its application.

585 F.2d at 607.

These decisions highlight the critical difference between the related-party principle embodied in Section 405.427 and the blanket disallowance at issue in the instant case. Section 405.427 does not prohibit reimbursement for the reasonable costs of materials and services obtained from related-party suppliers; it merely establishes a rebuttable limitation on costs which will be deemed

12. It is, of course, possible that no commercial lender would have been willing to finance the transaction in question and that borrowing from related parties (such as former stockholders) represents the only feasible means for institutions such as Northwest Hospital to become non-profit hospitals. If this is the case,

then the effect of the challenged disallowance would be to discourage conversion to non-profit status—clearly not a goal contemplated by the Medicare statute.

13. Or to their price in the open market, whichever is lower.

reasonable (and hence reimbursable). Section 405.419, by contrast, precludes reimbursement for *all* interest payments made on related-party loans, regardless of their reasonableness, and despite the Secretary's explicit acknowledgment that "necessary and proper interest on both current and capital indebtedness is an allowable cost." 42 C.F.R. § 405.419(a) (1976). The former approach serves the dual statutory objectives of eliminating excessive reimbursement while at the same time compensating providers for their actual Medicare-related expenses, both direct and indirect. The latter form of regulation, by contrast, pursues the first objective only by virtually ignoring the second. The latter regulation thus contravenes the statutory requirement of reimbursing Medicare providers for all "reasonable costs" allocable to the care of Medicare patients.

Only a handful of federal courts have addressed the statutory validity of the precise interest disallowance challenged here.[14] In *Trustees of Indiana University v. United States*, 618 F.2d 736 (Ct.Cl.1980), the Court of Claims held that section 405.419(c) could not validly be interpreted to preclude reimbursement for interest incurred on loans made to a University Hospital by its parent University at interest rates of 5 and 6 percent per annum. In reversing the Secretary's disallowance, the Court of Claims noted that the charged interest "was far below the market rate," and that the University was "the only source from which the hospitals could borrow." *Id.* at 740. Although the court limited its holding to "the particular and unusual circumstances" of the case before it, 618 F.2d at 740, we believe that the reasoning employed by the

Court of Claims supports the result reached here, and that the circumstances of the instant case are not dissimilar to those confronted by the Court of Claims.[15]

In *Goleta Valley Community Hospital v. Schweiker*, 647 F.2d 894 (9th Cir. 1981), by contrast, the Ninth Circuit cursorily upheld the automatic disallowance of related-party interest on the ground that it, like the cost limitation found in section 405.427, represents a reasonable method of preventing " 'the reimbursement of excessive charges resulting from self dealing ....' " *Id.* at 897, *quoting American Hospital Management Corp. v. Harris*, 638 F.2d 1208, 1213. For the reasons discussed at pages 992–994, *supra*, we find the related-party principles embodied in these two regulatory provisions to be significantly different, and we therefore are not persuaded by the analogy drawn by the Ninth Circuit in *Goleta Valley*. In addition, we note that *Goleta Valley* did not involve, as does this case, the conversion of a Medicare provider from profit to non-profit status.

In *South Boston General Hospital v. Blue Cross of Virginia*, 409 F.Supp. 1380 (W.D. Va.1976), a district court struck down the disallowance of related-party interest as contrary to the purposes of the Medicare statutes, holding that the disallowance

> erect[ed] a roadblock to those who miss a turn and engage in a related party transaction, albeit in good faith, for a below market value purchase price with entirely reasonable interest rates[.]

409 F.Supp. at 1385. The *South Boston* court also rejected the government's argument that elimination of the challenged regulation would result in widespread abuse of the reimbursement provisions of the Act.

---

**14.** Two other district court decisions, *Caylor-Nickel Hospital v. Califano*, CCH Medicare and Medicaid Guide ¶ 30,718 (N.D.Ind. Sept. 10, 1979), and *Hillside Community Hospital v. Matthews*, 423 F.Supp. 1168 (N.D.Cal.1976), have sustained the regulation against constitutional attack. No constitutional claims have been raised in the instant case.

**15.** *But see Jackson Park Hospital Foundation v. United States*, 659 F.2d 132 (Ct.Cl.1981) (distinguishing *Trustees of Indiana University*, and upholding disallowance of related-party inter-

est on bonds used to finance purchase of "nearly bankrupt" for-profit hospital by not-for-profit foundation). *Cf. Stevens Park Osteopathic Hospital, Inc. v. United States*, 633 F.2d 1373, 1381–84 (Ct.Cl.1980) (rejecting provider's contention that the application of section 405.-419(c), in conjunction with the allowance to for-profit hospitals of a return on equity capital, creates "an arbitrary and capricious distinction between profit and nonprofit organizations" in a related-party setting).

The court reasoned that the standards set forth in sections 405.419(b)(2) and (3)(i) defining "necessary" and "proper" interest were adequate to ensure the bona fideness and reasonableness of related-party loans. *See also Northwest Community Hospital, Inc. v. Califano,* 442 F.Supp. 949 (S.D.Iowa 1977) (related-party disallowance not applicable to contract between hospital and previously unrelated management corporation; statutory objectives may be achieved through application of general reasonableness criteria).

In *Caylor-Nickel Hospital, Inc. v. Califano,* CCH Medicare and Medicaid Guide ¶ 29,619 (N.D.Ind. March 1, 1979), by contrast, a district court in this circuit upheld the validity of the challenged interest disallowance as applied to loans made to a nonprofit hospital by several of its leading physicians and by a research foundation controlled by members of the hospital staff. In upholding the Secretary's disallowance of the claimed interest expenses, the district court relied heavily on the particular character of the loan transactions in question. Thus, the court noted that

> [F]or one of the payments for which reimbursement is requested . . . there does not appear to be any legitimate business reason for the underlying transaction, the purchase of Melco by the hospital from the research foundation. The sole purpose of the arrangement seems to have been to create an artificial and unnecessary debt owed by the hospital to the foundation, the interest on which would ultimately be payable by the federal government.

The court also noted that the second set of loans, made to the hospital by its affiliated research foundation, were unsecured and were made at a time when the hospital's credit was weak, thus providing an appropriate rationale for the regulatory disallowance:

> It is not the purpose of the Medicare program to shore up financially weak medical institutions, even medically excellent ones . . . . While this might be a legitimate interest, the Secretary may

not consider it in determining whether a cost is reasonably related to the treatment of Medicare patients. Interest on unpaid physicians' fees, interest which is payable solely because the hospital cannot timely pay the salaries of its professional staff, is not properly chargeable to the Medicare program.

We agree with the *Caylor* court that the interest payments at issue in that case do not appear to have constituted properly reimbursable Medicare expenses. However, we would reach that result, not through a blanket disallowance of related-party loans, but through application of the standards defining "necessary" interest set forth in section 405.419(b)(2) of the regulations. As the quoted portions of the *Caylor* court's opinion indicate, the transaction involving the research foundation would not qualify as a "loan made to satisfy a financial need of the provider," while the loan involving the physicians' salaries was apparently not "made for a purpose reasonably related to patient care." 42 C.F.R. § 405.419(b)(2) (1976). In the instant case, by contrast, application of neither of these criteria supports a disallowance of the interest payments in question. Nor can the interest here be characterized as "improper," since it was clearly not "incurred at a rate[ ] in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made." 42 C.F.R. § 405.419(b)(3)(i). Thus, there appears to be no good reason, other than the existence of the blanket disallowance itself, for precluding reimbursement for the interest payments at issue in this case.

In sum, to finance a sale consistent with the purposes of the Medicare program, funds must be supplied from some source. The supplying of such funds inescapably involves a cost (interest). It is entirely possible, particularly where loan funds are scarce, that the *only* available source of funds will be the sellers (who are related parties). In such a case it would be egregiously unjust, as well as contrary to the terms of the Medicare statute, to disallow this inescapable interest cost. Even where

other sources of funds can be found, moreover, the commercial rate of interest payable on those funds is likely to be considerably higher than the rate payable to a related-party seller. It is unreasonable as well as economically inefficient to force nonprofit hospitals to incur these higher (but unquestionably reimbursable) costs merely because *no* interest paid to a related party may be lawfully reimbursed. Hence, the application of the challenged regulation to the facts of the instant case is unreasonable and invalid.

### Conclusion

For the foregoing reasons, the judgment of the district court, invalidating the disallowance of related-party interest in this case, is affirmed. To parallel the treatment already approved for depreciation, interest shall be allowed on that portion of the related-party loan equal to the excess of the former for-profit hospital's depreciated cost over the $100,000 paid in cash at the time the transaction was closed. To the extent that sections 405.419(b)(ii) and (c) of the Medicare regulations appear to preclude this result, those sections are invalidated as inconsistent with the language and purpose of the Medicare statute.

AFFIRMED.