Ivan BATANIC, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

Nos. 91–3250, 92–2480.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1993.

Decided Dec. 17, 1993.

663

Royal F. Berg (argued), Kenneth Y. Geman, Chicago, IL, for petitioner.

Richard M. Evans, William J. Howard, Lori L. Scialabba, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, Richard L. Thornburg, U.S. Atty. Gen., Office of U.S. Atty. Gen., Washington, DC, A.D. Moyer, I.N.S., Chicago, IL, Marshall T. Golding (argued), Office of Immigration Litigation, Civ. Div., Washington, DC, for respondent.

Before FLAUM, RIPPLE, and ROVNER, Circuit Judges.

1. Mr. Batanic is named in the administrative proceedings as Ivan Batinic or John Batinich. We use the spelling of his name provided in the notice of appeal.

2. Mr. Batanic also raises two other issues in this appeal: whether the 1990 Amendments to the Act preclude withholding of deportation for aliens convicted of aggravated felonies pursuant to § 243(h)(2)(B), 8 U.S.C. §·1253(h)(2)(B), and

RIPPLE, Circuit Judge.

Ivan Batanic[1] petitions for review of a decision of the Board of Immigration Appeals (the "Board") that denied him leave to file an application for political asylum *nunc pro tunc* to May 18, 1990 under section 208(d) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1158(d).[2] We reverse and remand.

## I

### BACKGROUND

Mr. Batanic is a native of Croatia who entered the United States as a visitor in 1972 and became a lawful permanent resident in 1985 through marriage to a United States citizen. On May 4, 1989, the Immigration and Naturalization Service (the "INS") issued an Order to Show Cause and Notice of Hearing to Mr. Batanic charging him with deportability under § 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11), on the basis of a state court conviction for delivery of a controlled substance. An initial hearing was held on February 22, 1990, at Statesville Correctional Center in Joliet, Illinois. At the hearing, Mr. Batanic appeared without counsel and was informed of the nature of the proceedings. He advised the immigration judge (the "IJ") that his direct criminal appeal was still pending, and stated that he had tried to reach his attorney but had been unsuccessful. The IJ continued the hearing until May 18, 1990.

When the proceedings were reconvened, Mr. Batanic informed the IJ that the Illinois Appellate Court had denied his appeal and that he had retained an attorney named Paul Johnson to represent him at the hearing. Mr. Johnson, however, was not present at the hearing. He had been denied admittance to Statesville because he had not filed an appearance form in advance of the hearing even though the notice provided to Mr. Ba-

whether the Act as amended comports with due process if that section authorizes withholding of deportation solely upon the finding that an alien is an aggravated felon without an individualized determination of whether the alien constitutes a danger to the community. Our recent decision in *Garcia v. INS*, 7 F.3d 1320 (7th Cir.1993), is dispositive on these issues.

tanic stated that the form could be filed at the hearing. Although the attorney representing the INS stated that he had no objection to an adjournment, the IJ proceeded with the hearing. At that time, Mr. Batanic admitted his conviction, and the IJ found him deportable and ordered his deportation. On appeal, relying on our decision in *Castaneda–Delgado v. INS,* 525 F.2d 1295 (7th Cir.1975), the Board reversed the order of deportation and remanded the case to the IJ. The Board held that Mr. Batanic's right to counsel had been infringed by proceeding with the hearing in the absence of his attorney.

The remand proceedings commenced on January 30, 1991. In the meantime, the amendments to the asylum statute (the "1990 Amendments") had taken effect. The 1990 Amendments rendered someone convicted of an aggravated felony statutorily ineligible to apply for asylum. 8 U.S.C. § 1158(d).[3] Through counsel, Mr. Batanic conceded deportability but sought leave to file an application for asylum *nunc pro tunc* to May 18, 1990, the date of the original deportation hearing. Although the attorney representing the INS stated he had no objection to the *nunc pro tunc* motion, the IJ denied the motion on the ground that Mr. Batanic was statutorily ineligible for asylum based on the 1990 Amendments to the Act.

Mr. Batanic appealed the denial of his motion to file for asylum *nunc pro tunc.* On September 5, 1991, the Board dismissed the appeal. The Board held that it did not have the authority to ignore Mr. Batanic's statutory ineligibility for asylum or to consider his request as though it had been made prior to the enactment of the 1990 Amendments to the Act. It reasoned that to do so would exceed its authority on the ground that it lacked jurisdiction to pass on the validity of the statutes and regulations it administered. Board Op. at 2–3, Sept. 5, 1991.

## II

## ANALYSIS

### A. *Standard of Review*

■■■ Pursuant to 8 U.S.C. § 1105a(a), we have jurisdiction to review final deporta-

tion orders. The review of an agency's construction of a statute involves the initial determination of whether Congress has spoken precisely to the question at issue by employing traditional tools of statutory construction. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). When Congress has done so and its intent is clear, we must reject any contrary constructions by the agency. *Id.* By contrast, if we determine that Congress has not spoken directly to the particular question at issue, we may not impose our own construction of the statute but must determine whether the agency's interpretation is permissible. *Id.* at 843, 104 S.Ct. at 2782. In such instances, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* (collecting cases). Rather, the agency's interpretation of the statute is entitled to deference if it represents a reasonable accommodation of the conflicting policies that were committed to the agency. *Id.* at 843–45, 104 S.Ct. at 2782–83 (citing *United States v. Shimer,* 367 U.S. 374, 382–83, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).

### B. *Interpretation of the Statute*

Mr. Batanic argues that the Board impermissibly denied his motion for leave to apply for asylum *nunc pro tunc* because he would have been eligible to apply for asylum but for the prior procedural error on the part of the IJ. He contends the Board's decision was constitutional error because it constitutes a denial of his opportunity to be heard on his asylum motion and because he was in effect denied the right to representation by counsel.

The INS contends that Congress has not spoken directly to the issue of how the amended asylum statute is to be applied to a person who claims that he would have ap-

---

**3.** Section 1158(d) now states: "An alien who has been convicted of an aggravated felony, notwith-

standing subsection (a) of this section, may not apply for or be granted asylum."

plied for asylum before the enactment of the 1990 Amendments if he had not been wrongfully deprived of counsel. Accordingly, the INS urges us to defer to the Board's interpretation of the amended asylum statute on the ground that it is reasonable and not contrary to the clear intent of Congress.

■ Our first task is to determine whether Congress has directly spoken to the issue at hand. Specifically, we must search for a congressional directive on how the amended asylum statute is to be applied in a situation in which a person would have had the benefit of prior law but for a procedural error that occurred before the effective date of the 1990 Amendments. We look first to the plain language of the statute. *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). In relevant part, the amended asylum statute provides that "[a]n alien who has been convicted of an aggravated felony ... may not apply for or be granted asylum." 8 U.S.C. § 1158(d). Further, section 515(b) of Pub.L. 101–649, 104 Stat. 5053, as amended Pub.L. 102–232, 105 Stat. 1752, provides that the amendments are effective as of November 29, 1990, and are applicable to convictions entered before, on, or after the date of enactment and to applications for asylum made on or after such date. Because the statute is silent with respect to the situation before us, we are obligated to defer to the Board's interpretation of the statute if it is reasonable. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782.

■ We now must determine whether the Board reasonably interpreted the amended asylum statute to preclude applications for asylum *nunc pro tunc* when such relief would have been available but for a prior procedural error. Although we must acknowledge that, as a general proposition, we are obligated to defer to the interpretation of the statute embraced by the agency that has responsibility for its administration, it is also necessary to take into account that the obligation of deference admits of certain fundamental and important exceptions. Our deferral to an agency's interpretation stems from the *Chevron* decision. In *Chevron,* the Court stated:

> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations :
>
> " has been consistently followed by this Court whenever the decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subject to agency regulations....
>
> If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or the legislative history that the accommodation is not one that Congress would have sanctioned.

467 U.S. at 844–45, 104 S.Ct. at 2782–83 (quoting *Shimer,* 367 U.S. at 382–83, 81 S.Ct. at 1560). The principle of deference rests, according to the Court, upon the recognition that most agencies deal in complex and narrow fields. The agency, when interpreting a statute which it administers in an area in which it has expertise, is better able to evaluate and weigh the competing policy interests in that field than is a generalist federal court.[4] Therefore, according to *Chevron,* it is an agency's exercise of its expert judgment—in a sufficiently authoritative manner—that warrants our deference. The principle of *Chevron* also admits of another limitation: the interpretation must be reasonable. "Deference does not mean acquiescence. As in other contexts in which we

4. *See, e.g., Pauley v. Bethenergy Mines, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991):

It is precisely this recognition that informs our determination that deference to the Secretary is appropriate here.... The identification and classification of medical eligibility criteria necessarily require significant expertise, and entail the exercise of judgment grounded in policy concerns. In those circumstances, courts appropriately defer to the agency entrusted by Congress to make such policy determinations.

defer to an administrative interpretation of a statute, we do so. ... only if the administrative *interpretation is reasonable."* *Presley v. Etowah County Comm'n,* — U.S. —, —, 112 S.Ct. 820, 831, 117 L.Ed.2d 51 (1992) (emphasis added).

Neither of these prerequisites is present in the case before us. At the outset, we note that the INS has not invited our attention to any authoritative interpretations of the statute in this context. There are no regulations or similar authoritative pronouncements that have been promulgated to assist those responsible for the enforcement of the statute in its fair and even-handed administration. Furthermore, in its application of the statute in the decision under review, the Board did not weigh carefully the competing policy interests involved. The Board simply assumed the applicability of the statute and declined to pass on its constitutionality.

■ In addition to these shortcomings, the Board has failed to perform its interpretive function because it has given inconsistent interpretations of the statute. As noted above, the Board in its September 1991 decision merely assumed that the statute applied to Mr. Batanic. It, however, had taken the opposite view in its December 1990 decision. When the Board heard Mr. Batanic's first appeal, the bar on applications for asylum was already in effect.[5] Nevertheless, in remanding the case for further proceedings because of the denial of the right to counsel, the Board explained that "had [counsel for Mr. Batanic] appeared with the respondent, he would have made application for remedies available to his client, to wit asylum." Board Op. at 2, Dec. 5, 1990. The Board then remanded "so that the deportation proceedings may be held wherein the respondent is afforded the opportunity to appear with counsel." *Id.* Although the issue of Mr. Batanic's application for asylum was brought up by counsel during the first appeal before the Board, the Board made no reference to the amendments it now claims bar Mr. Ba-

tanic's application. Indeed, the Board, by its order, implied that the bar date would not apply to Mr. Batanic.[6] When an agency gives inconsistent interpretations of a statute, as the Board did here, those interpretations do not warrant our deference. *See Pauley,* — U.S. at —, 111 S.Ct. at 2535 ("As a general matter, of course, the case for judicial deference is less compelling with respect to agency positions that are inconsistent with previously held views.").

■ Other considerations counsel against our accepting the interpretation suggested by the Board. In interpreting the statute before us, we must not assume that Congress acted unconstitutionally. Indeed, "[w]here an otherwise acceptable construction of a statute would raise serious constitutional problems," we are required to "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 574, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) (citing *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 499–501, 99 S.Ct. 1313, 1318–19, 59 L.Ed.2d 533 (1979)); *see also Northwest Hosp., Inc. v. Hosp. Serv. Corp.,* 687 F.2d 985 (7th Cir. 1982) ("[I]t is well settled that courts are obligated to interpret a statute in a manner which avoids potential constitutional infirmities."). We believe the Board's second interpretation of the statute—the one the INS urges upon us now—would raise serious due process concerns and consequently we reject that interpretation.

■ Ever since the *Japanese Immigrant Case,* 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903), it has been well established that due process applies to deportation hearings. *See Reno v. Flores,* — U.S. —, —, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). The problem is with

---

5. The amendments took effect on November 29, 1990 and, by their terms, applied to all applications for asylum made on or after that date.

6. Although he applied the 1990 Amendments to Mr. Batanic, the IJ noted that the Board's re-

mand order was inconsistent with these amendments: "Frankly, it puzzles me that the Board took the course of action that it did, because the decision is dated December 5th, 1990 after the effective date of the Act." R. at 135.

specifics; the Court never has enumerated the requirements of due process in a deportation hearing. As one authoritative treatise has noted:

> To some extent the concepts of fair play and fair dealing are intangibles, measured by standards that are constantly changing. However, the deportation hearing must satisfy currently prevailing norms of fairness. Obviously, of course, the procedural injunctions of the statute must be observed.

3 Charles Gordon & Stanley Mailman, *Immigration Law and Procedure* § 72.04[1] at 72–109 (1993). The statutory procedural requirements are set forth in 8 U.S.C. § 1252(b). They are: 1) notice of charges and time and place of proceedings; 2) the privilege of an attorney at no expense to the government; 3) the reasonable opportunity to examine the evidence, present witnesses, and cross-examine adverse witnesses; and 4) a decision based on reasonable, substantial, and probative evidence. We have noted that the statute "clearly and unambiguously grants aliens the right to counsel of their choice in deportation proceedings" and that "[s]uch provisions are an integral part of the procedural due process to which the alien is entitled." *Castaneda–Delgado v. INS*, 525 F.2d 1295, 1302 (7th Cir.1975).[7]

■ Generally speaking, procedural errors are cured by holding a new hearing in compliance with due process requirements. Thus, when we determined that an alien was not given the opportunity to present evidence, we remanded "to permit [him] to have his day in court and to present all relevant evidence in support of his application for asylum." *Shahandeh–Peh v. INS*, 831 F.2d 1384, 1390 (7th Cir.1987). Furthermore, when a party was deprived of the right to counsel, we stated: "The circumstances call for the prophylactic remedy of vacating the order of deportation and for writing on a clean slate." *Castaneda–Delgado*, 525 F.2d at 1302. In those situations, a new hearing effectively cured any procedural defect by putting the parties into the position they would have been had no procedural error taken place.

However, when the procedural defect has also resulted in the loss of an opportunity for statutory relief, these remedies cannot cure the defect. Before the Board, Mr. Batanic's counsel argued "that it is clear from all of the above that [Mr. Batanic] would have greatly benefited by having counsel present ... when he had an opportunity to request remedies to deportation." R. at 39.[8] Indeed, the Board assumed this to be the case in its remand order when it stated: "[H]ad [counsel for Mr. Batanic] appeared ... he would have made application for remedies available to his client, to wit asylum." Board Op. at 2, Dec. 5, 1990. When Mr. Batanic was deprived of his right to counsel, he was also deprived of his right to apply for asylum; the two were inextricably tied. The only way to cure the procedural defect in the original hearing is to afford Mr. Batanic not only a new hearing, but also a hearing in which counsel effectively may protect Mr. Batanic's rights to the same extent that the attorney would have in the first hearing. Thus, the attorney must, consistent with due process, be able to apply for asylum *nunc pro tunc.*[9]

---

7. *See also Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir.1990) ("This court has held that aliens have a due process right to obtain counsel of their choice at their own expense.... 'We have characterized an alien's right to counsel as "fundamental" and have warned the INS not to treat it casually....' ").

8. In its brief to the Board, counsel also stated: "It is therefore the argument of the Respondent that the presence of counsel could have resulted in a request for the right not only to seek possible remedies available to the Respondent but to possibly attack the very basis for the hearing." R. at 41.

9. The Board, in another appeal, implicitly recognized that deprivation of a right to counsel may be reason to entertain an application made after the November 29, 1990 deadline. *Matter of C–*, Interim Decision 3180, 1992 WL 200361 (B.I.A. May 28, 1992). In that decision, a party seeking asylum received an application for asylum on October 17, 1990, but failed to file it before the November 29, 1990 change in law. The party alleged that he was unable to file his asylum application prior to the deadline because, among other reasons, he was not represented by counsel at that time. The Board determined that "[t]here is no indication that the respondent was denied his right to counsel in deportation proceedings." *Id.* at 3. The Board did not state that denial of

In short, the Board's second reading of the statute cannot be squared with the demands of due process as Congress understood them upon its enactment of the 1990 Amendments. Instead, the statute must be read to allow Mr. Batanic the opportunity to apply for asylum.

 Even if these constitutional concerns were not present, we would hesitate to adopt the position taken by the Board. It is true that the 1990 Amendments, as well as the predecessor 1988 Amendments, were designed to "strip[ ] aliens who commit serious crimes in the United States of the opportunity to enter or remain in this country." *Garcia v. INS,* 7 F.3d 1320 (7th Cir.1993). However, the language of the statute suggests that Congress did not intend to strip aliens with pending applications for asylum of their opportunity for this remedy. The 1990 Amendments state that "[t]he amendment made by subsection (a)(1) [disallowing aggravated felons from applying for asylum] shall apply to convictions entered before, on, or after the date of the enactment of this Act and to applications for asylum made on or after such date." Pub.L. 101–649 § 515(b), 104 Stat. 5053, as amended Pub.L. 102–232, 105 Stat. 1752. Congress clearly chose not to make this section applicable to applications for asylum currently pending before the INS. Had it intended to make the bar apply to applications made before the date of enactment, it could have done so by using the language that it did use for convictions: The amendment shall apply to applications for asylum made before, on, or after such date. "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russelo v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1984) (citations omitted). Thus, Congress consciously determined that asylum should not be denied automatically to those whose applications for this type of relief were pending on the date the Amendments were enacted. This clear distinction in statutory language also supports our con-

clusion that Mr. Batanic must be given the advantage of the law that existed when his first hearing was held.

### Conclusion

For the foregoing reasons, the judgment of the Board is reversed and the Board is ordered to allow Mr. Batanic to file his application for asylum.

REVERSED AND REMANDED.

---

the right to counsel would not affect the timeliness of the application.