**Eduardo ANGEL and George Lopez, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

v.

**Earl L. BUTZ, United States Secretary of Agriculture, Defendant-Appellee.**

**No. 72–1727.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 22, 1973.

Decided Nov. 13, 1973.

Rehearing Denied Dec. 7, 1973.

---

James Phelan, Denver, Colo., and Jonathon B. Chase, Boulder, Colo., for plaintiffs-appellants.

Anthony J. Steinmeyer, Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., James L. Treece, U. S. Atty., and Walter H. Fleischer, Dept. of Justice, Washington, D. C., with him on the brief), for defendant-appellee.

Before PICKETT, McWILLIAMS and BARRETT, Circuit Judges.

PICKETT, Circuit Judge.

As required by 7 U.S.C. § 1131(c)(1) (1970) of the Sugar Act of 1948, as amended, the Secretary of Agriculture in 1971 and 1972, as in previous years, determined the wages required to be paid to persons engaged in the growing of sugar beets on farms in Colorado.[1] Repre-

---

1. The pertinent part of § 1131(c)(1) is as follows:

"That all persons employed on the farm in the production, cultivation, or harvesting of sugar beets or sugarcane with respect to which an application for payment is made shall have been paid in full for all such work, and shall have been paid wages there-

sentatives of the workers appeared at public hearings prior to the adoption of wage schedules and made recommendations to the Secretary concerning wage schedules and other matters not directly related to wages.[2] Except for some increase in the wage structure, substantially all of the workers' demands were rejected. Following the promulgation of the rules the Secretary immediately published them together with a statement of the bases and considerations upon which they were determined, as required by 7 U.S.C. § 1153 (1970).[3]

This class action was brought by representatives of the workers seeking a judgment declaring the regulations to be invalid because rejection of the "proposed regulations was arbitrary, capricious, and constituted an abuse of discretion." The trial court concluded that there was no genuine issue of material fact, granted the Secretary's motion for summary judgment, and dismissed the action. The workers first contend that the record before the District Court was insufficient to support the Secretary's references that are a part of the "Statement of Bases and Considerations" which is included in the 1972 wage rate determination.

▇ The purpose of the Sugar Act of 1948 was to protect the welfare of consumers of sugar in the United States and those engaged in the production of sugar. To accomplish this purpose, quotas for the production of sugar beets and sugarcane were fixed, the importation of sugar was regulated in a manner resulting in the control of sugar prices and provision was made for the payment of subsidies to the growers of sugar beets and cane. One of the statutory conditions for the receipt of the subsidies was a requirement that producers pay to field workers the wages determined by the Secretary to be fair and reasonable. The issues in this case arise from the failure of the Secretary, in making his determination of fair and reasonable wages, to accept the demands made by representatives of the workers. The statute anticipates that the Secretary will, prior to a determination of the wages to be paid, make an adequate investigation and hold public hearings to afford an opportunity for interested parties, including sugar beet workers and producers, to be heard. The hearing, however, is not an adversary proceeding and is only a portion of the investigation to be made by the Secretary. The Secretary determines what are fair and reasonable wages from the entire investigation. This determination is nonadjudicatory and in the nature of legislative action. The statute does not require that the wage determination be made only on a formal record after a public hearing. United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972); Mobil Oil Corp. v. F. P. C., 469 F.2d 130, 139 (D.C. Cir. 1972), cert. denied, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 159 (1973); California Citizens Band Association v. United States, 375 F.2d 43 (9th Cir.), cert. denied, 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967); Flying Tiger Line, Inc. v. Boyd, 244 F.Supp. 889 (D.D.C.1965). In exercising this legislative function the Secretary should consider evidence formally presented at hearings, but may rely upon his own ex-

---

for at rates not less than those that may be determined by the Secretary to be fair and reasonable after investigation and due notice and opportunity for public hearing; and in making such determinations the Secretary shall take into consideration the standards therefor formerly established by him under the Agricultural Adjustment Act, as amended, and the differences in conditions among various producing areas: . . . ."

2. The additional proposals included subjects such as a written contract for all labor to be performed; an arbitration panel to consider

wage disputes; penalty for employment of aliens unlawfully in the United States; housing without cost to workers; and mileage for interstate transportation of workers.

3. The Administrative Procedure Act, 5 U.S.C. § 553(c), requires "a concise general statement of their basis and purpose" to be incorporated in rules adopted by an agency. This section also provides that "[w]hen rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title shall apply instead of this subsection."

pertise and other relevant material available to him. Pacific Coast European Conference v. United States, 350 F.2d 197 (9th Cir.), cert. denied, 382 U.S. 958, 86 S.Ct. 433, 15 L.Ed.2d 362 (1965); Flying Tiger Line, Inc. v. Boyd, 244 F. Supp. 889 (D.D.C.1965).

To sustain their position that the record is inadequate the workers rely primarily upon Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). As stated in that decision, the action "was plainly not an exercise of a rulemaking function." 401 U.S. at 414, 91 S.Ct. at 823. It has no application here. The facts in the *Volpe* case were measured against statutory standards authorizing the expenditure of public funds on highways to be constructed through public parks only if a "feasible and prudent" alternate route did not exist. The local citizens claimed that in authorizing expenditures for a highway through a park the Secretary acted in violation of "clear statutory provisions." The court stated that "[i]f the statutes are to have any meaning, the Secretary cannot approve the destruction of parkland unless he finds that alternative routes present unique problems." 401 U.S. at 413, 91 S.Ct. at 822. No contention is made in the instant case that the rules adopted were in conflict with any federal statute. The attack is upon the regulations themselves, not upon their administration.

■■ In the exercise of the rulemaking power the test of the validity of the Secretary's action is whether his action was arbitrary, capricious, or an abuse of discretion. The burden was upon the workers to establish this fact. New York Foreign Freight Forwarders and Brokers Association, Inc. v. Federal Maritime Commission, 337 F.2d 289 (2d Cir. 1964), cert. denied, 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965); Regular Common Carrier Conference v. United States, 307 F.Supp. 941 (D.D.C.1969); 2 K. Davis Administrative Law Treatise § 14.-14 (1958). The determination of the regulations was made by an appropriate official of the Department of Agriculture. In a discovery deposition he gave testimony concerning the investigation and the materials available to him in making his determination. He stated that consideration was given to all recommendations made, including those of the sugar beet growers and the workers. This material was also reviewed in the "Statement of the Bases and Considerations" filed with the adopted regulations including reasons for the rejection of the workers' proposals. The purpose of the public hearing was to afford an opportunity for interested parties, including the workers and sugar beet growers, to have their say. The Secretary was not required to accept the recommendations of either. His refusal to accept such recommendations or his limited explanation of why any of them were rejected is no indication that he acted arbitrarily. The record was adequate for the disposition of the issues. *See* American Trucking Associations, Inc. v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); Automotive Parts and Accessories Association, Inc. v. Boyd, 132 U.S. App.D.C. 200, 407 F.2d 330 (1968).

■ Throughout the proceedings the Secretary has maintained that his statutory authority was limited to fixing wage rates and that he was without jurisdiction to regulate other working conditions as demanded by the workers. The District Court held that the broad authority of the statute authorized the Secretary to make regulations pertaining to these demands.[4] When the 1972 regulations were promulgated the Secretary made it clear that the workers' proposals were rejected not only because it was believed that they were not authorized by the Sugar Act, but also that "they were deemed to be impractical and undesirable. . . ." It is now argued that the "lack of authority" position of the Secretary was erroneous and if it had any influence on the final determination of the wage rates they cannot stand. In sup-

---

4. We do not decide the correctness of this decision.

port of this view reference is made to D. C. Federation of Civic Associations v. Volpe, 459 F.2d 1231 (D.C.Cir.), cert. denied, 405 U.S. 1030, 92 S.Ct. 1290, 31 L. Ed.2d 489 (1972), as being "remarkably similar to the one at bar." The District of Columbia case is not similar to this case, but is more like Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), which was concerned with the question of whether the Secretary had complied with statutory provisions in the allocation of funds for the construction of a highway on existing park lands. Neither of the cases dealt with the rulemaking power of the Secretary. The difference in these cases and the instant case is illustrated by the District of Columbia decision, which said:

"If, on the other hand, the Secretary's action had been purely legislative, we might have agreed with the District Court that his decision could stand in spite of a finding that he had considered extraneous pressures. Beginning with Fletcher v. Peck, [10 U.S. 87, 6 Cranch 87, 3 L.Ed. 162 (1810)], the Supreme Court has maintained that a statute cannot be invalidated merely because the legislature's action was motivated by impermissible considerations (except, perhaps, in special circumstances not applicable here.) . . ." 459 F.2d at 1247.

In the promulgation of the wage rate rules under the Sugar Act the Secretary was exercising his legislative powers and if he considered an alleged improper reason along with one that was proper, that action in itself does not establish that the result was arbitrary or capricious. Cf. Palmer v. Thompson, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971); United States v. O'Brien, 391 U.S. 367, 88 S. Ct. 1673, 20 L.Ed.2d 672 (1968). The workers' case has been very forcefully and thoroughly presented; however; we think the arguments have strayed from the narrow question of whether the Secretary, in the exercise of his rulemaking powers, acted arbitrarily or capriciously.

Affirmed.