ST. JOSEPH HOSPITAL, South Bend, an Indiana non-profit Corporation, Plaintiff,

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services; and Carolyn K. Davis, Administrator of the Health Care Financing Administration, Defendants.

No. S82–505.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 19, 1983.

James D. Kemper and Richard A. Smikle of Ice, Miller, Donadio & Ryan, Indianapolis, Ind., Thomas F. Cohen, South Bend, Ind., for plaintiff.

Larry Steele, U.S. Atty. by Carol Husum, Asst. U.S. Atty., South Bend, Ind., for defendants.

## MEMORANDUM and ORDER

SHARP, Chief Judge.

This action was filed pursuant to 42 U.S.C. § 1395*oo*(g) on November 4, 1982, by the plaintiff hospital against the Secretary of the Department of Health and Human Services and the Administrator of the Health Care Financing Administration. Jurisdiction of this court over the matter is predicated on a federal question. 28 U.S.C. §§ 1331, 1361. Venue is properly laid in this division and district. 28 U.S.C. § 1391. This case is presently before the court on cross-motions for summary judgment.[1]

The plaintiff herein seeks judicial review of the denial by the Medicare fiscal intermediary[2] of Medicare reimbursement for certain costs incurred by the plaintiff. Additionally, plaintiff also seeks declaratory and injunctive relief to ensure that these costs are not disallowed in the future.

The intermediary disallowed Medicare reimbursement for costs incurred by the hos-

---

1. On March 1, 1983, the Secretary filed a motion for judgment on the pleadings. On May 3, the plaintiff in turn filed a motion for summary judgment. This court elects to treat defendant—Secretary's motion as one for summary judgment as well under the provisions of F.R.Civ.P. 56.

2. In accord with 42 C.F.R. § 421.5(b), the intermediary is deemed to be the agent of the Secretary of Health and Human Services.

pital in providing bedside telephones to Medicare patients on the ground that these costs are for non-reimbursable personal comfort items. 42 U.S.C. § 1395y(a)(6). The intermediary disallowed these costs based on unequivocal language in regulations promulgated by the Secretary of Health and Human Services (HHS). 42 C.F.R. § 405.310(j).

A hearing with oral argument was held in open court on the parties' motions on August 4, 1983, in South Bend, Indiana. Both sides having carefully briefed their respective positions, this court turns now to an examination of the merits of plaintiff's claim.

### I.

Plaintiff argues that the patient telephone regulation is procedurally invalid because it was promulgated without a record or any supporting evidence. (The relevant regulation was published on October 20, 1966, at 31 Fed.Reg. 13534.) Thus, plaintiff contends that this court must conclude that no "rule promulgation record" exists, and no "post-hoc rationalizations" may be considered. Plaintiff cites numerous authorities for the proposition that a contemporaneously documented rule promulgation record is required. In particular, plaintiff argues that such a record is required for the reviewing court to examine and evaluate the agency's deliberative process and to ascertain whether all relevant factors were duly considered. In short, plaintiff maintains that this "relevant factors" test is the controlling standard in this case. The Secretary, on the other hand, contends that the plaintiff has misconstrued the law with regard to the nature and scope of the required patient telephone regulation record.

■ At the outset it must be noted that the burden is on the plaintiff to demonstrate the invalidity of the regulation, i.e., a regulation is presumed valid unless and until the complaining party overcomes that presumption by sustaining its burden of proof. See, e.g., *People of State of Illinois v. Nuclear Regulatory Commission,* 591 F.2d 12, 16 (7th Cir.1979); *Texaco v. FEA,*

531 F.2d 1071, 1077 (TECA), cert. denied, 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976); *Angel v. Butz,* 487 F.2d 260, 262–263 (10th Cir.1973), cert. denied, 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974); *American Nursing Home Ass'n. v. Cost of Living Council,* 497 F.2d 909, 914 (TECA 1974); *Utah Power and Light Co. v. Morton,* 504 F.2d 728, 735–36 (9th Cir.1974); *U.S. v. Boyd,* 491 F.2d 1163, 1170 (9th Cir. 1973). A careful examination of the applicable case law reveals that plaintiff has not overcome that presumption of validity.

■ *St. James Hospital v. Schweiker,* 698 F.2d 1337 (7th Cir.1983), which upheld the validity of 42 C.F.R. § 405.310(j), is the leading case on the patient telephone regulation. In that case, the Court of Appeals for this circuit reversed the district court which had invalidated the patient telephone regulation. *St. James Hospital v. Harris,* 535 F.Supp. 751, 765 (N.D.Ill.1981).

In its decision, the district court declared the pivotal issue to be as follows:

This court must determine, since a challenge is made to the validity of a regulation promulgated by the Secretary, whether she exercised discretion through a reasoned consideration of the relevant factors....

535 F.Supp. at 762. Thus, the district court considered the regulation under the "relevant factors" standard, and found it deficient.

As noted above, the Court of Appeals reversed and its decision governs, in contrast to the district court which held that the regulation is invalid because all relevant factors were not considered. The Court of Appeals specifically phrased the issue as whether it could be shown that the agency's determination was "arbitrary and capricious," and concluded it could not. 698 F.2d at 1346–1347. Plaintiff argues that the patient telephone regulation is arbitrary and capricious because of the purported failure to consider all relevant factors. Since the district court held that the regulation is invalid after considering whether all relevant factors were considered, either the

Court of Appeals was able to determine that all relevant factors were considered or it felt that this standard did not apply.

Moreover, the absence of an official contemporary rule-making record was brought squarely to the attention of the Court of Appeals in *St. James*. In her brief, the Secretary advised the Court:

> At the outset, a precautionary note about the current record before this Court is in order. Due to the peculiar posture of this case, the record contains primarily plaintiff's own evidence attacking the Secretary's patient telephone rule, and no reasoned administrative response in defense of the rule. This is so because the Secretary's patient telephone regulation dates from 1966, an era when APA rulemaking requirements did not apply to Medicare regulations. See *Humana of South Carolina v. Califano*, 590 F.2d 1070, 1084 (D.C. Cir.1978). Thus, no rule-making record is available.

Brief for the Appellant, *St. James Hosp. v. Schweiker* (No. 82–1253, June 11, 1982) at 33. The Secretary further stated:

> In these circumstances, this Court (if it finds jurisdiction) may choose, *as we suggested below,* to return the patient telephone issue to the Secretary for development of an administrative record, including the Secretary's full justification for his rule (see the Secretary's Reply to Plaintiff's Supplemental Memorandum at 4). See *Oljato Navajo Tribe v. Train,* 515 F.2d 654, 665–67 (D.C.Cir.1975); and see *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419–21, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971).

*Id.* at 34 n. 13. (emphasis added).

The Court of Appeals did not deem such a remand necessary and it clearly upheld the patient telephone regulation with full awareness of the lack of a contemporaneous rule promulgation record that plaintiff decries. The Court of Appeals, citing the arbitrary and capricious standard of *Citizens to Preserve Overton Park v. Volpe, supra,* on which plaintiff relies here upheld 42 C.F.R. § 405.310(j) under the same standard. 698 F.2d at 1346.

Moreover, in doing so the Court rejected appellee St. James Hospital's argument that the administrative history of the regulation which does exist required that the regulation be invalidated. The hospital argued that this history showed that the Secretary had failed to address the relevant factor of therapeutic value and had relied on an erroneous interpretation of the legislative history, specifically, the television rental example. The hospital supported this argument by citing the requirement that the regulation must be based on consideration of all relevant factors. Brief for Appellee, *St. James Hosp. v. Schweiker,* (No. 82–1253, June 22, 1982) at 42–43.

Plaintiff makes the same claims here. The Court of Appeals in *St. James* found an adequate and permissible basis on which to evaluate the patient telephone regulation despite the absence of a contemporaneous rule promulgation record. The decision in *St. James* upholding 42 C.F.R. § 405.310(j), notwithstanding the "contrary" evidence in the record that patient telephones do have therapeutic value (698 F.2d at 1341) should therefore not to be disregarded by this court in deciding plaintiff's administrative procedure claim.

Plaintiff herein also suggests that *St. James* is not controlling in the Seventh Circuit because that decision purportedly is inconsistent with an earlier decision, *Northwest Hospital, Inc. v. Hospital Service Corp.,* 687 F.2d 985 (7th Cir.1982). At the least, *St. James* must be deemed to be the controlling decision which modifies *Northwest,* if in fact the two cases are inconsistent.

The two cases, however, may not be inconsistent. Both cases involve challenges to Medicare regulations. Plaintiff asserts that the two are inconsistent because in *St. James* the Court exercised a "total deference" to the Secretary (see 698 F.2d at 1346–47) which had been rejected in *Northwest.* Plaintiff claims that in *Northwest* the Court took a more cautious approach, mindful of the final authority of courts to interpret statutes. (687 F.2d at 991). Notwithstanding plaintiff's attempt at distinc-

tion, the *St. James* Court asserted its ultimate authority to interpret statutes and did not abdicate it. 698 F.2d at 1346. It was on the basis of this authority that the *St. James* Court rejected the Secretary's argument that the Court lacked subject matter jurisdiction to consider the challenge to the patient telephone regulation. *Id.*

The difference between the two cases, if any, lies in the nature of the regulations reviewed. In *Northwest,* the plaintiff challenged 42 C.F.R. § 405.419(c), a Medicare regulation that the Secretary used to exclude all reimbursement for the interest costs of a loan transaction between "related parties." In defending the regulation, the Secretary argued that it was necessary as a broad prophylactic rule to insure the arms-length integrity of transactions, even if it produced inequitable results, *i.e.,* excluded the non-excessive costs of the loan that should otherwise be reimbursed. In effect, the rule operated as a penalty. 687 F.2d at 990. In doing so, the exclusion was inconsistent with the statute by being broader than necessary. *Id.* at 992.

Here, the Secretary maintains that the patient telephone regulation excludes only those costs of telephones that should be excluded, *i.e.,* those for personal comfort, while the cost of telephones related to patient care (*e.g.,* intercoms, cardiac alert systems) is covered. Similarly, the *Northwest* court contrasted the related parties provision under challenge with other Medicare regulations, upheld by courts, which excluded similar costs but allowed the provider to demonstrate that the costs were *bona fide* and receive reimbursement. 687 F.2d at 993. The exclusion challenged in *Northwest* was not similarly rebuttable, as the patient telephone exclusion is. *Id.* at 993–994.

The Court in *Northwest* found independent reasons not to defer to the Secretary's judgment as much as it otherwise would. The agency had not consistently interpreted the regulation under similar facts. 687 F.2d at 991. Further, the related party exclusion at issue did not apply to transactions between a provider and an affiliated

religious order. The *Northwest* Court saw a potential constitutional infirmity under the first amendment. The Court's duty to construe the regulation to avoid the infirmity took precedence over the principle of deference to the agency. *Id.* at 992. None of the above features of the *Northwest* case were present in *St. James.*

In precisely the same procedural and factual context, the Eleventh Circuit recently reached precisely the same result as that in *St. James. Memorial Hospital v. Heckler,* 706 F.2d 1130 (11th Cir.1983). These cases from two circuits are directly apposite. They are each based on a correct reading of the rule-making function and statutory authority questions involved. There is nothing in the legislative history to support the limited and narrow contentions advanced by this plaintiff.

## II.

In addition to plaintiff's argument that the "relevant facts" standard was not applied in the promulgation of the regulation in question, plaintiff contends that there should have been a record created contemporaneously at the administrative level.

The *St. James* Court could not regard the absence of an official contemporaneous rule promulgation record for the patient telephone regulation as a defect because the Seventh Circuit therein adhered to the Supreme Court's decision in *Vermont Yankee Nuclear Power v. Natural Resources Defense Council,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). See also, *People of State of Illinois v. Nuclear Regulatory Comm.,* 591 F.2d 12, 15–16 (7th Cir.1979); accord, *American Mining Congress v. Marshall,* 671 F.2d 1251, 1261 (10th Cir.1982); *Sierra Club v. Costle,* 657 F.2d 298, 391 (D.C.Cir.1981); *United Steel Workers v. Marshall,* 647 F.2d 1189, 1214 (D.C.Cir.1980) cert. denied, 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981); *South Louisiana Environmental Council v. Sand,* 629 F.2d 1005, 1017 (5th Cir.1980); *Energy Reserves Group v. DOE,* 539 F.2d 1082, 1096 (TECA 1976) cert. denied, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977); *St. Joseph's Hosp. v.*

*Blue Cross,* 489 F.Supp. 1052, 1061 (D.N.Y. 1979), *aff'd,* 614 F.2d 1290 (1980).

In *Vermont Yankee,* the Court construed the Administrative Procedure Act, 5 U.S.C. § 553. At issue was the question whether the rule-making proceedings used to address the environmental effects of the uranium fuel cycle had been sufficient. Specifically, the Court of Appeals had invalidated the rule because of failure to allow "discovery" or "cross-examination" by interested parties. 435 U.S. at 539–43, 98 S.Ct. at 1209–11. The rule-making proceeding there was subject to the provisions of 5 U.S.C. § 553(b) and (c) which require notice, an opportunity to comment and a concise general statement of basis and purpose of the adopted rule. Thus, by invalidating the rule the Court of Appeals imposed additional procedural requirements beyond those outlined in the statute. The Supreme Court reversed, holding that the Court of Appeals had impermissibly intruded on the agency's rule-making province. *Id.,* at 548, 98 S.Ct. at 1214.

The Court interpreted 5 U.S.C. § 553 and stated:

> Generally speaking this section of the Act established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rule-making procedures. Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them. This is not to say necessarily that there are no circumstances which would ever justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute. But such circumstances, if they exist, are extremely rare.

*Id.,* at 524, 98 S.Ct. at 1202. The Court expressly rejected the argument that 5 U.S.C. § 553 merely establishes lower procedural bounds and that a court may routinely require more. *Id.,* at 545–47, 98 S.Ct. at 1212–13.

The Supreme Court has reaffirmed its construction of 5 U.S.C. § 553 that the statute provides the maximum procedural requirements. *Steadman v. SEC,* 450 U.S. 91, 100, 101 S.Ct. 999, 1007, 67 L.Ed.2d 69 (1981); *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Thus, contrary to plaintiff's statement, there is no "common law requirement" of administrative procedure.

Recently, the Supreme Court decided the case of *Baltimore Gas and Electric Co. v. Natural Resources Defense Council,* —— U.S. ——, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). There the Court rejected a challenge under 5 U.S.C. § 706 that regulations which permitted nuclear power plants to be licensed without consideration of the environmental effects of nuclear waste. The Court rejected the theory that such were "arbitrary and capricious" and in so doing reaffirmed *Vermont Yankee,* emphasizing that "administrative decisions" should be set aside in this context, as in every other, only for *substantial* procedural or substantive reasons as mandated by statute. —— U.S. at ——, 103 S.Ct. at 2252 (emphasis added).

As noted above, plaintiff asks this court to invalidate the patient telephone regulation because of the absence of a contemporaneous documentation of the agency's deliberative process. Plaintiff argues such a record is the sole basis for the Court to determine whether all relevant factors were considered and to assess whether the action was or was not arbitrary and capricious.

Such a requirement goes beyond the Administrative Procedure Act. Plaintiff acknowledges that rulemaking relating to "benefits" is exempt from the APA requirements pursuant to 5 U.S.C. § 553(a)(2), and that this benefits exemption includes Medicare regulations. *Humana of South Carolina v. Califano,* 590 F.2d 1070, 1082–1084 (D.C.Cir.1978). The Secretary waived that exemption in 1971, 39 Fed.Reg. 2532, but regulations issued prior to that date remain exempt. *Id.* The patient telephone regulation was promulgated in 1966 and is therefore exempt.

The benefit program exemption is not limited to the APA rule-making procedures regarding notice and comment. The exemption includes all of the requirements of § 553. Included in the exemption, then, is the requirement that after consideration of "the relevant matter, the agency shall incorporate in the rules adopted a concise general statement of the basis and purpose." 5 U.S.C. § 553(c).

This concise statement of requirement is clearly less demanding than the APA requirements for rule making on an agency hearing under 5 U.S.C. §§ 556, 557. § 557(c) provides: "all decisions ... shall include a statement of—(A) findings and conclusions, and the reasons or basis therefore, on all the material issues of fact, law or discretion presented in the record...." See *Amoco Oil Co. v. EPA,* 501 F.2d 722, 734–36, 739 (D.C.Cir.1974); *General Telephone Co. v. U.S.,* 449 F.2d 846, 862 (5th Cir.1971). It is this modest statement of basis and purpose, together with comments, that *when applicable* serves as the basis for determining whether all relevant factors have been considered and similar matters. *Rodway v. USDA,* 514 F.2d 809, 817 (D.C. Cir.1975); *General Telephone v. U.S., supra* (D.C.Cir.1975); *St. Joseph's Hosp. v. Blue Cross, supra,* 489 F.Supp. at 1063; *Hiatt Grain and Feed Inc. v. Bergland,* 446 F.Supp. 457, 485 (D.Kan.1978) aff'd, 602 F.2d 929 (10th Cir.1979), cert. denied, 443 U.S. 1073, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980).

Thus, rule making subject to 5 U.S.C. § 553 requires a contemperaneous rule-making record, a statement, that provides a basis (perhaps the only basis for such a rule) to determine if the rule is arbitrary and capricious. Rule making that is exempt from the requirements of 5 U.S.C. § 553 cannot be subject to that requirement and still be exempt. Plaintiff argues that nothing less than imposing an inapplicable requirement on exempt rule making will suffice. This the court may not do under the dictates of *Vermont Yankee.*

The Supreme Court recently applied *Vermont Yankee* in rejecting a challenge to a Medicaid regulation in a case highly instructive on the matter before this court. *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). The Court reversed the ruling of the Court of Appeals which had relied on *Citizens to Preserve Overton Park v. Volpe, supra,* to conclude that the Secretary's record did not show that the relevant factors had been taken into account in promulgating regulations specifying how the deeming of income between spouses for determining eligibility to receive benefits would be implemented. *Gray Panthers v. HCFA Administrator,* 629 F.2d 180, 183–186 (D.C.Cir.1980). The Court upheld the regulation, emphasizing the explicit delegation of broad rule-making authority for Medicaid to the Secretary. The Court concluded that the factors which the Court of Appeals required the Secretary to consider had been considered by Congress in authorizing and delegating the deeming regulation to the Secretary in the first instance. Therefore, notwithstanding *Overton Park,* the Court held that the Secretary was not subject to requirement of considering relevant factors, citing *Vermont Yankee* as analagous support. 453 U.S. 43–50, n. 22, 101 S.Ct. at 2639–43, n. 22.

*Gray Panthers* is relevant here. Although 5 U.S.C. § 553 rule making was involved in *Gray Panthers* because of the Secretary's waiver of the exemption from the APA and ordinarily would require an adequate statement of consideration of relevant factors under *Overton Park,* the regulation was "exempt" from that requirement because of congressional authorization. As in *Vermont Yankee,* imposing additional requirements as the Court of Appeals did was unwarranted.

The patient telephone regulation here presents a similar situation to that in *Gray Panthers.* Under Medicare, the Secretary has broad discretionary power to promulgate regulations. *St. James v. Schweiker, supra,* 698 F.2d at 1346. In authorizing the exclusion of personal comfort items in the first instance, Congress took into account the relevant factors. The Secretary in carrying out his duty to draft a regulation

defining personal comfort items did so in a manner consistent with Congressional intent. There was no need for the Secretary to do more, *Schweiker v. Gray Panthers, supra,* and the Court need not concern itself with the adequacy of consideration of factors in the administrative record.

The Secretary does not claim that the benefit exemption authorizes the agency to be arbitrary and capricious when adopting regulations. She may not ignore clear Congressional direction or conclusive relevant evidence. The issue for this court is what record, if any, of justification for the patient telephone regulation will suffice. Plaintiff argues that only a contemporaneous rule promulgation record of sufficient content will suffice. As noted above, such a requirement goes beyond the APA requirements for an exempt benefit regulation and it therefore may not be judicially imposed by the court as a basis to invalidate the patient telephone regulation. *Vermont Yankee, supra.*

Under the *Vermont Yankee* doctrine, as applied to the APA scheme for an exempt "benefit" regulation, the requirement of a sufficient contemporaneous statement of justification does not apply to a regulation not subject to 5 U.S.C. § 553, such as the patient telephone regulation. For this reason, virtually all of the authority plaintiff cites to support the argument that an inadequate contemporaneous administrative record invalidates the regulation are inapposite: either the cases predate the 1978 decision in *Vermont Yankee,* or the cases involve rule-making proceedings that were subject to the notice, comment and concise general statement of basis and purpose requirements of § 553. *E.g., Buckeye Power Inc. v. EPA,* 481 F.2d 162 (6th Cir.1973), cert. denied, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

Plaintiff suggests that the benefit exemption does not apply after all. First, relying on the principle that benefit exemption should be narrowly applied, plaintiff argues that it applies only to the patient recipient of the benefits, and not to the provider of services. The case law holding that the benefit exemption applies to pre-1971 Medicare regulation has rejected that argument. In *Humana of Smith Carolina Inc. v. Califano, supra,* 590 F.2d at 1082–1083, the Court of Appeals gave considerable weight to the principle that APA exemptions should be construed narrowly, but nonetheless rejected the provider-beneficiary distinction:

Regulations governing the amount of reimbursement allocable to providers, then, plainly implicate administration of Medicare funds.... As the District Court observed, rules "establishing a reimbursement formula for payments to organizations in order that they actually deliver ... benefits (to subscribing patients) can only be viewed as 'relating to' those benefits." To this we might add our own conviction that the nexus is "clear ( ) and direct ( )."

Humana contends, however, that the situation of a provider is closer to that of firms in regulated industries, which generally are afforded an opportunity to participate in rulemaking, than to aid-beneficiaries, who indisputably are affected by the benefits exemption. Humana makes much of the fact that providers themselves are not recipients of gratuitous benefits, but of compensation for service performed....

That providers are not afforded governmental assistance in the strict sense has little bearing on the applicability of Section 553(a)(2). Certainly a provider's interest in reimbursement is of no greater magnitude than a beneficiary's concern for program funding, and the citizenry is affected no more substantially by rules implicating one rather than the other.

Similarly, courts since *Humana* have had no difficulty applying the benefits exemption in provider challenges. *St. Francis Mem. Hosp. v. U.S.,* 648 F.2d 1305, 1308, 227 Ct.Cl. 307 (1981); *Good Samaritan Hospital v. Mathews,* 609 F.2d 949, 953–54 (9th Cir. 1977); *Cheshire Hospital v. NH–VT Hospital Service, Inc.,* 528 F.Supp. 1104 (D.N.H. 1981), reversed on other grounds, 689 F.2d 1112 (1st Cir.1982). No cases have been

found which support plaintiff's argument for the distinction.

Plaintiff further argues that because certain Medicare regulations were published as proposed rules for comment prior to 1971, when the Secretary waived the benefit exemption, all Medicare regulations must be considered subject to APA rulemaking requirements. This argument ignores the doctrine of *Vermont Yankee, supra,* that while "agencies are free to grant additional procedural rights in the exercise of discretion ... reviewing courts are generally not free to impose them...." 435 U.S. at 524, 98 S.Ct. at 1202. "(A)gencies should be free to ... pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Id.* at 543, 98 S.Ct. at 1211. In particular, the Court noted that Congress had determined that agencies "will be in a better position ... to design procedural rules adapted to the tasks of the agency involved." *Id.* at 525, 98 S.Ct. at 1202.

Plaintiff cites the publication on June 2, 1966 of proposed Subpart D, Principles of Reimbursement, 20 C.F.R. 405.401 et seq. (31 Fed.Reg. 7864); testimony of the Secretary about publication of these proposed regulations for reimbursement principles; and a 1970 amendment to a provision of Subpart D, 42 C.F.R. § 405.415 (35 Fed.Reg. 12330, Aug. 1, 1970).

The Secretary has a statutory mandate that reimbursement principles used in Medicare must consider those generally applied by national organizations and established prepayment programs. 42 U.S.C. § 1395x(v)(1)(A). The publication of proposed reimbursement principles, which cover matters such as calculation of interest expense and depreciation, treatment of bad debts and similar matters, were explicitly in the process of consultation that the Secretary utilized to fulfill that mandate to draw on expertise outside the agency in this area. 31 Fed.Reg. 7864. The Secretary apparently thought such a process was appropriate to that task. Other regulations such as those to further exclusions from coverage mandated by Congress were not relevant to that statutory requirement and the Secretary did not elect to grant additional procedural rights when issuing these regulations.

The 1966 patient telephone regulation falls under the benefit exemption to 5 U.S.C. § 553. As an exempt regulation, the APA statutory scheme as interpreted by the Supreme Court in *Vermont Yankee* precludes imposing a requirement of a contemporaneous statement. The regulation may not be invalidated on this basis.

### III.

The patient telephone regulation was adopted in 1966. Now, some seventeen years later, this court is asked to determine the validity of the regulation. Consideration of the process of rule promulgation presents a quite different task than where a challenged regulation is of recent vintage or has at least been adopted within a time when the parameters of rule-making have remained basically the same.

This court might consider that the regulation even predates *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971), where the Supreme Court held that informal agency action was to be reviewed to determine whether it was arbitrary and capricious based on the administrative record before the Secretary at the time of the decision. Prior to *Overton Park,* the guiding star for treatment of facts in rule making was *Pacific States Box and Basket Co. v. White,* 296 U.S. 176, 186, 56 S.Ct. 159, 163, 82 L.Ed. 138 (1935). There a unanimous Court held that where the "regulation is within the scope of authority legally delegated, the presumption of facts justifying its specific exercise attaches...." The presumption was rebuttable and the appropriate vehicle for the challenging party was to present rebutting facts to a reviewing court. *Id.* at 185, 56 S.Ct. at 163.

The 1946 enactment of the APA was predicated on the treatment of facts in rule making set out in *Pacific States Box and Basket.* 1 Davis, *Administrative Law Treatise,* §§ 6:1, 6:12, 6:13, 6:16 at 449, 498, 524 (2d ed., 1978). Specifically:

In 1946 the assumption was that the factual ingredient of rule-making could be fought out in a reviewing court, and that the court would make a de novo determination of the facts. The Senate committee, for instance said: "where ... an affected party claims in a judicial proceeding that a rule issued without an administrative hearing (and not required to be issued after such hearing) is invalid, he may show the facts upon which he predicates such invalidity." Sen.Doc. No. 248, 79th Cong., 2d Sess. 214 (1946). The House committee made the same statement and added "in short, where a rule or order is not required by statute to be made after opportunity for agency hearing and to be reviewed solely upon the record thereof, the facts pertinent to any relevant question of law must be tried and determined de novo by the reviewing court respecting either the validity or application of such rule or order—because facts necessary to the determination of any relevant question of law must be determined of record somewhere and, if Congress had not provided that an agency shall do so, then the record must be made in court." *Id.* at 279–280. *Id., § 6:13 at 507.*

It is no longer the law, of course, that the factual record is usually developed solely in the first instance in court. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The regulation was, as a matter of administrative procedure, indisputably valid when promulgated. Here, this regulation was not seriously challenged prior to 1979. See *St. Francis Hospital Inc. v. Califano,* 479 F.Supp. 761 (D.D.C.1979). Courts have recognized this predicament by regarding a regulation that is a contemporaneous construction of the statute by the agency charged with its execution as presumed to reflect Congressional understanding. See *U.S. v. Marion County School Dist.,* 625 F.2d 607, 613 n. 13 (5th Cir.1980), cert. denied 451 U.S. 910, 101 S.Ct. 1980, 68 L.Ed.2d 298 (1981), and cases cited therein. The 1965 Medicare Act was the result of legislation proposed by the agency, whose personnel participated in the legislative process of hearings. When the patient telephone regulation was promulgated it is likely the agency personnel drew on their understanding of the personal comfort exclusion enacted by Congress.

Second, there is the longstanding status of the patient telephone regulation. Since the regulation implemented the personal comfort exclusion of 42 U.S.C. 1395y(a)(6) in 1966, Congress has amended § 1395y(a) substantially on several occasions. P.L. 90–248 (1968), P.L. 92–603 (1972), P.L. 93–233 (1973), P.L. 95–210 (1977), P.L. 96–611, 96–499 (1980), P.L. 97–248 (1982). Other subsections of § 1395y have also been amended frequently. Congress has never seen fit to amend the personal comfort exclusion or in any way alter the Secretary's implementation in the patient telephone regulations.

In such circumstances, the consistent administrative interpretation and Congressional inaction is weighty evidence of Congressional approval. See *Haig v. Agee,* 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981). The conclusion that Congress has acquiesced in and approved an openly asserted consistent administrative construction of a statute is particularly warranted where the rule-making authority granted is broad, as here, *St. James v. Schweiker, supra,* and Congress has enacted legislation in the area (*i.e.,* § 1395y(a) exclusions) but left the challenged administrative policies untouched. *Haig v. Agee, supra.* Acquiescence may, under some circumstances, be found in nothing more than silence. *Id.* Since the personal comfort item exclusion was not self-executing, Congress knew it was leaving further definition to the Secretary. *St. James v. Schweiker, supra.* For 17 years, it has left the consistent exclusion of bedside telephones untouched.

It should be noted that the search for a factual record presupposes the need for one. Such an assumption may not always be justified:

At one end, rules may be based on law, on interpretation of a statute, and on policy preferences, and hardly at all on identifiable facts; such rules may clearly be

valid without factual support. Tax regulations often call for no factual inquiry beyond common knowledge; for instance, under 26 U.S.C. § 162, which allows a deduction for "traveling expenses (including amounts expended for meals and lodging . . .)," the regulation provides that a taxpayer who spends a week on business and five weeks on vacation at the destination has no deduction; *factual support for such a regulation is intrinsically unnecessary, for it is a mixture of interpreting the legislative intent and declaring subordinate policy.* At the opposite end of the scale, a rule may be obviously unreasonable unless the factual support for it is adequate; for instance, the Consumer Product Safety Commission may not ban a consumer product unless it supports the ban with facts showing that the product presents an unreasonable risk of injury.

Davis, *Administrative Law Treatise, supra,* § 6:13 at 510. (emphasis added); see *St. Joseph's Hospital v. Blue Cross, supra,* 489 F.Supp. at 1063 (Medicare).

The questions for this court are whether the decision-making vested in the Secretary here is legislative in character and, even if not, whether explicit factual findings are possible. *Industrial Union Dept. v. Hodgson,* 499 F.2d 467, 474–95 (D.C.Cir.1974). Implementation of the personal comfort exclusion was a matter menable only to limited factual inquiry at best. Congress adequately spelled out the considerations, i.e., the relevant factors, it had in mind. See *Schweiker v. Gray Panthers, supra.*

No amount of evidence about the morale boosting effects of telephones on ill patients could supply the nexus Congress insisted must exist—a meaningful contribution to the physiological improvement of an illness or malformed body member—for a cost not to be excluded.

The nature of the regulation involved here requires that the court approach plaintiff's emphasis on the "relevant factors test" with caution. Plaintiff argues that the test is a demanding separate, independent test for determining whether agency

action is arbitrary and capricious and that actual or apparent agency failure to consider the relevant factors will always invalidate a regulation. *Schweiker v. Gray Panthers, supra,* shows that this is not always so. The relevant factors test is separate and independent only where there is a statutory prescription of factors that the agency must consider.

In *Mobil Oil v. DOE,* 610 F.2d 796 (TECA 1979), cert. denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980), the relevant factors the court held not considered were those mandated by the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 753(b)(1). 610 F.2d at 801. Plaintiff argues that the tie to a statutory prescription is not required for the relevant factors test to apply, relying on *In re Stripper Well Exemption,* 520 F.Supp. 1232, 1267–68 (D.Kan.1981), which so held. *Stripper Well,* however, relied on *McCulloch Gas Processing Corporation v. DOE,* 650 F.2d 1216 (TECA 1981) which like *Mobil Oil* involved a regulation that was subject to the statutorily mandated factors of the EPAA. At least one court has interpreted *McCulloch* differently than did the *Stripper Well* court, applying it solely to the EPAA relevant factors. *Naph-Sol Refining Co. v. Murphy Oil,* 550 F.Supp. 297, 311 (W.D. Mich.1982).

Further, the decision in *Stripper Well* has been reversed. *In re Stripper Well Litigation v. DOE,* 690 F.2d 1375 (TECA 1982). The Court of Appeals responded to the district court's lengthy analysis of the relevant factors test by concluding that what the district court had done was substitute its own opinion for that of the agency with which it disagreed. *Id.* at 1381–1389. The Court of Appeals went on to apply the correct standard of review, whether the agency interpretation, to which it gave deference, was reasonable. *Id.* at 1392.

The *Stripper Well* litigation underscores the fact that engaging in independent relevant factor analysis when there is no statutory prescription of factors is not favored, because it runs the risk of courts substituting their own judgment for that of the

agency as to what are the relevant factors. See *Kollett v. Harris,* 619 F.2d 134, 140–141 (1st Cir.1980). These "relevant factors" cases concern the adequacy of a rule-making record that is not required here because of the benefit exemption of 5 U.S.C. § 553.

Similarly, plaintiff's authority that a court may not consider "post hoc rationalizations" arise from cases where a rulemaking record was required. Where notice and comment is not required, as here, after the fact explanations do not evade the requirements of the APA. *Rodway v. U.S.D.A., supra* at 817. Moreover, the authority bars only consideration of post hoc rationalizations created in the course of and for the purpose of litigation. *Weyerhaeuser Co. v. Costle,* 590 F.2d 1011, 1030 (D.C.Cir.1978); *Hooker Chemical and Plastics Corp. v. Train,* 537 F.2d 620, 636 (2d Cir.1976); *Rodway v. USDA,* 514 F.2d 809, 816–817 (D.C. Cir.1975).

### IV.

42 C.F.R. § 405.310(j) has a rational basis and is consistent with Congressional intent and the legislative history of 42 U.S.C. § 1395y(a)(6).

Plaintiff points to the legislative history of the Medicare Act to argue that Congress intended that the Medicare program not exclude patient telephones as covered services. This reliance is misplaced for several reasons. The most significant item in the legislative history upon which plaintiff relies is the fact that, in testimony before the House of Representatives Committee on Ways and Means in 1963, then HEW Secretary Anthony J. Celebrezze gave patient telephones as an example of excluded services where the telephones constituted "items supplied at the request of the patient." Some two years later, the Senate and House reports noted that "... (i)tems supplied at the request of the patient for his convenience, such as television rental in hospitals, would not be paid for under the program." S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* (1965) U.S.Code Cong. and Ad.News at 1969; H.R.Rep. No. 213, 89th Cong., 1st Sess. 25 (1965).

Plaintiff argues that substitution of televisions for telephones as an example evidences a Congressional intent to make telephones a covered item, and to reject the Secretary's example of telephones. Comments made in connection with the Senate committee's discussion of covered inpatient services described in Section 1395x(b), by the mere failure to adopt Secretary Celebrezze's example, cannot be seen as an intent to include patient telephones as a covered service. The Committee Reports merely gave televisions as different example of excluded services. Their example is unexplained, does not purport to the sole example of a personal comfort item, and hardly evidences a Congressional disagreement with the telephone example proposed by Secretary Celebrezze some two years earlier. The Secretary's general theme to the Congress was that the program would be less expensive, not more so.

The view of the Department sponsoring legislation ordinarily is significant in determining legislative intent. See, *e.g., Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969). Secretary Celebrezze's view of patient telephones—which Congress nowhere contradicted—stands as evidence of an understanding during the Medicare Act's consideration that patient telephones should not be reimbursable.

Plaintiff's reliance on the reference in the Senate report to barring reimbursement for "*health* items or services" that are not "necessary for the treatment of illness or injury, or to improve the functioning of a malformed body member" is misplaced. This language had nothing to do with the personal comfort exclusion. Rather it is a clear reference to the companion exclusion of 42 U.S.C. § 1395y(a)(1), which is all but identical to the language quoted.

Since the above language is irrelevant to the regulation in this case, plaintiff's sole support for the argument that the personal comfort exclusion applied only to health items and not to equipment rests on the examples of massages and heat lamp treatment used in the committee reports. Neither this example nor the reference to

"items supplied at the request of the patient" in the legislative history preclude the Secretary's exclusion of the cost of regularly supplied patient telephone equipment that is not related to patient care.

To read such strict limits into what are clearly general illustrations is fundamentally at odds with the Secretary's broad rulemaking power under the Medicare Act. *St. James Hospital v. Schweiker, supra,* 698 F.2d at 1346. The exercise of this broad power is entitled to great deference and provides great room for agency initiative and policy making through regulations and little room for judicial second-guessing of agency choices among reasonable options.

The limits for which plaintiff argues are of the sort that Congress clearly knew how to put in the statute when enacting exclusions under 42 U.S.C. § 1395y(a) to direct the Secretary's discretion, *e.g.,* type of eye examination expenses excluded (§ 1395y(a)(7)), circumstances in which cosmetic surgery is covered or not (§ 1395y(a)(10)). Congress could easily have added the adjective "health" or the qualifier "supplied at the request of the patient" at any time to § 1395y(a)(6). Instead, the exclusion is broad, nowhere defined and left to the Secretary to define. *St. James Hospital v. Schweiker, supra,* 698 F.2d at 1346.

The plaintiff argues from these references in the legislative history that an item may only be classified as a personal comfort item when it has been specifically requested by a patient. Thus, if a particular hospital furnishes an item without a request, then it cannot be a personal comfort item. This could not possibly have been the intent of Congress. If in some hospitals an item is sometimes requested by patients, but other hospitals furnish that same item without request, the item cannot be considered reimbursable for those and non-reimbursable for the rest. Such a result would make no sense, because the decision with respect to reimbursement would then be not in the hands of Congress or of the Secretary, but unilaterally in those of the hospitals alone.

Congress could not have intended to exclude from the category of personal comfort items any item furnished by a hospital without request. Rather, in all likelihood Secretary Celebrezze and the House Committee referred to telephones and televisions as personal comfort items typically requested by patients in hospitals. There is no indication that either the Secretary or the Committee contemplated reimbursement to hospitals that routinely provide such services even without a request.

Thus, the legislative history referred to by the plaintiff does not indicate that Congress was opposed to an exclusion of patient telephones from reimbursement, or that Congress intended the personal comfort exclusion to apply only where the disputed item has been specifically requested by the patient. Plaintiff's reliance on the "ordinarily furnished" language of 42 U.S.C. § 1395x(b)(2) and its legislative history is similarly misplaced. Under plaintiff's argument, the Medicare Trust Fund would have to pay for ordinarily furnished Atari video games. Clearly, plaintiff's examples of drapes, air-conditioning, etc. represent environmental needs that are essential to patient maintenance in a health care facility. The Secretary's judgment that patient telephones are not similarly essential is not unreasonable.

In addition to this "ordinarily furnished" position, plaintiff advances a "therapeutic value" line of argument.

The Intermediary in the Florida Group Appeal disputed the therapeutic value evidence with the testimony of a statistician that challenged the reliability of that evidence. See *St. James v. Harris, supra,* 535 F.Supp. at 761. The Florida Group Appeal on which plaintiff relies presents no evidence to establish that there is any physiological benefit to having a telephone in a patient's room. In the absence of demonstrable physiological benefit, patient telephones cannot be considered to be therapeutic. The studies submitted do not demonstrate that patient telephones have *any* benefit whatsoever. Further, even had these studies validly demonstrated a psy-

chological benefit, they would still fall far short of showing any physiological benefit from patient telephones. It is but to restate the obvious to note that a broken leg will not heal faster because the patient has a telephone at his or her bedside.

The Secretary's patient telephone regulation cannot be invalidated merely because the Board, or even a court, disagrees with its premise unless that premise is without a rational basis. The therapeutic value evidence on which plaintiff relies does not even approach a showing that there is no rational basis for 42 C.F.R. § 405.310(j), or that the Secretary acted arbitrarily or capriciously in promulgating the regulation. 5 U.S.C. § 706; *Mourning v. Family Publications Services, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318, conformed to 488 F.2d 979 (5th Cir.1974).

The evidence relied on by the plaintiff from the Florida Hospital Group Appeal could not alter this result. The issue is not whether patient telephones may have some marginal morale boosting effect, but whether the Secretary acted reasonably in excluding from reimbursement some items which she determined fell within the definition of "personal comfort items" despite the potential that they might conceivably have some "therapeutic" value. The Secretary is permitted to draw a line somewhere between items that directly benefit the patient's condition and items that might have some beneficial effects, but that are primarily personal comfort items. The defendants have shown that the Secretary had broad discretion in this area and acted reasonably in making this determination. Because the Secretary's decision need only have a rational basis, the therapeutic value evidence could not invalidate the regulation.

As disclosed at oral argument, these are simply questions of law to be here decided within the context of F.R.Civ.P. 56. The plaintiff has failed to state a legal basis for the granting of summary judgment in its favor, while the defendants have stated such a basis for granting summary judgment in their favor. Accordingly, judg-

ment shall enter for the defendants and against the plaintiff, each party to bear its own cost. SO ORDERED.