**SACRED HEART HOSPITAL**

v.

**Otis R. BOWEN, Secretary of Health and Human Services.**

**Civ. A. No. 85–3890.**

United States District Court, E.D. Pennsylvania.

Nov. 17, 1986.

Frederick J. Lanshe, Allentown, Pa., and James B. Weiland, Baltimore, Md., for Sacred Heart Hosp.

Barbara Kopoa Gerolamo, Asst. U.S. Atty., Philadelphia, Pa., for Bowen.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The above captioned action comes before us, pursuant to the parties' cross-motions for summary judgment, for review of a decision by the Secretary of Health and Human Services denying the plaintiff reim-

bursement under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, for certain legal and advertising/public relations expenses it incurred during its cost reporting years 1981 and 1982.

I. *The Statutory and Regulatory Framework.*

The substantive and procedural framework established by Title XVIII has been described by a number of other courts, and we find it appropriate to draw upon their elucidations. As related by the Seventh Circuit Court of Appeals,

... Title XVIII of the Social Security Act (the 'Act'), ... established the federally funded health insurance program commonly known as 'Medicare'. 42 U.S.C. § 1395 *et seq.* (1976). Part A of the Medicare program, which is funded out of social security taxes, provides 'hospital insurance' for the aged and certain disabled individuals. Under Part A, the federal government reimburses eligible hospitals, nursing facilities, and home health agencies for the 'reasonable costs' of covered services provided to Medicare beneficiaries in accordance with a Congressionally established scheme.[1] 42 U.S.C. § 1395d (1976).

A hospital may become a Medicare provider, and thus become eligible for federal reimbursement, by filing an agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1395cc. Medicare providers are reimbursed for their services either by the Secretary or, more commonly, by certain private organizations acting as fiscal intermediaries pursuant to contract with the Secretary.[2] 42 U.S.C. § 1395h. As part of their fiscal responsibilities, these intermediaries are required to ascertain the amount of reimbursement which accurately reflects the 'reasonable cost' of the Medicare services provided by an eligible health care institution. A final calculation as to reimbursable costs is made annually, at the close of the provider's fiscal year, and is based upon a 'cost report' that each provider is required to file. 42 C.F.R. § 405–406(b).

Upon receipt of a provider's cost report, the fiscal intermediary is required to analyze the reported data, undertake any necessary audits and inform the provider, through a written Notice of Program Reimbursement, of the amount of Medicare reimbursement to which it is entitled. 42 C.F.R. § 405.1803. If the provider is not satisfied with this determination, and the total amount in controversy is at least $10,000, the provider may request a hearing before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. Within 60 days after a PRRB decision, the Secretary, on her own motion, may reverse, affirm or modify that decision. 42 U.S.C. § 1395oo(f)(1).[3] Pursuant to the applicable provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the provider may then seek review of the agency's final decision in federal district court. 42 U.S.C. § 1395oo(f)(1).

*Northwest Hospital, Inc. v. Hospital Service Corp.*, 687 F.2d 985, 986 (7th Cir.1982). *See also, Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 318 (5th Cir.1984); *American Medical International, Inc. v. Secretary of Health, Education and Welfare*, 466 F.Supp. 605, 609 (D.D.C.1979), *aff'd.*, 677

---

1. Congress terminated the "reasonable cost" reimbursement scheme for post–1983 cost years. The Medicare program presently operates under a system where the Secretary of Health and Human Services makes "prospective" payments to providers for reasonable costs based on patient diagnoses, as opposed to the costs actually incurred by providers. *See* 42 U.S.C. § 1395ww (West 1983 & West Supp.1986); *see also, Butler County Memorial Hospital v. Heckler*, 780 F.2d 352, 354, n. 1 (3d Cir.1985).

2. Blue Cross and Blue Shield Association/Blue Cross of Lehigh Valley serves as the plaintiff's fiscal intermediary.

3. The Secretary delegated his authority to review the Board's decisions to the Administrator of the Health Care Financing Administration ("HCFA"), who in turn re-delegated this authority to the Deputy Administrator. *See* 42 Fed.Reg. 13,262 (1977) and 42 Fed.Reg. 57,351 (1977).

F.2d 118 (D.C.Cir.1981); and *Doctor's Hospital, Inc. v. Califano,* 459 F.Supp. 201, 204 (D.D.C.1978).

42 U.S.C. § 1395x(v)(1)(A) (West 1983) in its pertinent parts defines "reasonable cost" as follows:

> The reasonable cost of any services shall be the costs actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services ... Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs ... which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance program ...) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs ... will not be borne by individuals so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs ...

Pursuant to his statutory authority, 42 U.S.C. § 1395hh (West 1983), the Secretary has promulgated a number of regulations further refining the concept of "reasonable cost". In 42 CFR § 405.451(a), the Secretary stated the following:

> All payments to providers must be based on the reasonable cost of services covered under Title XVIII of the Act and related to the care of the beneficiaries. *Reasonable cost* includes all *necessary and proper costs* incurred in rendering the services ...

*Id.* (Emphasis added).

The regulations define reasonable cost as

> ... both direct and indirect costs of providers of services. The objective is that under the methods of determining costs, the costs with respect to individuals

als covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program ...

42 CFR § 405.451(b)(1).

They define necessary and proper costs as

> ... costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of the provider's activity.

42 CFR § 405.451(b)(2). *See also, Annie M. Warner Hospital v. Harris,* 639 F.2d 961 (3d Cir.1981).

## II. *The History of This Case.*

The plaintiff is a not-for-profit acute-care general hospital licensed by the Commonwealth of Pennsylvania and certified as a "provider" of services under the Medicare program. *See* 42 U.S.C. § 1395x(u) (West Supp.1986). In 1971, the plaintiff and another acute-care facility, Allentown Hospital, embarked on a joint venture to establish Allentown/Sacred Heart Hospital Center (ASHHC), a new health care provider. Both Sacred Heart and Allentown Hospital, pursuant to the joint venture agreement, transferred or assigned to the new entity part of their approved bed capacity, substantial monetary assets and certain of their approved clinical services. The joint facility opened in 1974.

From its inception, the joint venture, for a variety of reasons, did not function smoothly. As a result, the plaintiff initiated litigation in the Pennsylvania state courts against Allentown Hospital and ASHHC, the progeny of the joint venture, aimed at rescinding the allocation of services agreement, regaining its capital investment in the joint venture and recovering the "beds" it had allotted to ASHHC. The plaintiff succeeded in extricating itself from the arrangement. On February 1, 1982, the parties to the state court action settled the matter according to an agreement terminating Sacred Heart's interest

in ASHHC and compensating Sacred Heart for its contribution to the joint venture. The state court approved the settlement agreement on November 5, 1982.

Sacred Heart, following the close of its fiscal years ending June 30, 1981, and June 30, 1982, filed costs reports with the Blue Cross and Blue Shield Association/Blue Cross of Lehigh Valley, its fiscal intermediary, listing the total costs it sought reimbursement for under the Medicare program. The plaintiff included in these costs: (1) the legal expenses it had incurred in extricating itself from the joint venture and (2) advertising/public relations costs it had incurred in advertising in the local media its position on the joint venture dilemma.

The parties do not dispute the amounts of these expenses. For fiscal years 1981 and 1982, the plaintiff accumulated legal fees totalling $52,781.00 with regard to the joint venture litigation. For fiscal year 1981, the plaintiff accumulated $24,472.00 in expenses related to the advertising campaign it conducted; it claimed no such costs for fiscal year 1982.

The fiscal intermediary disallowed the legal and advertising costs claimed by the plaintiff. (Administrative Record ("A.R.") 2675–2676). The plaintiff thereupon appealed the disallowance to the PRRB. (A.R. 2673–2674). The PRRB conducted a hearing pursuant to the plaintiff's appeal on November 15, 1984, A.R. 0059–0353, and thereafter, on May 3, 1985, issued a decision affirming the fiscal intermediaries' dis-

allowance of the legal and advertising costs. (A.R. 0006–0014). The Deputy Administrator of the HCFA declined to reverse, affirm or modify the PRRB's decision, and the Board's decision thus became the final decision of the Secretary.[4] (A.R. 0001). The plaintiff next filed the instant action pursuant to 42 U.S.C. § 1395oo(f) seeking judicial review of the Secretary's final decision.

The gravamen of the plaintiff's "appeal" is that the Secretary's decision is contrary to law, specifically, 42 U.S.C. § 1395x(v)(1)(A), because it denies the plaintiff reimbursement for costs incurred in providing needed inpatient services to Medicare beneficiaries and it causes non-Medicare patients to bear the costs of services rendered to Medicare beneficiaries. (Plaintiff's Complaint, Doc. #1, ¶27). More specifically, the plaintiff alleges that the Secretary acted contrary to law, arbitrarily and capriciously and without the support of substantial record evidence when the record is viewed as a whole.[5] (*Id.* at ¶31). The Secretary, of course, denies that his decision is arbitrary or capricious, unsupported by substantial evidence or otherwise not in accordance with the law.

### III. *The Scope of Judicial Review.*

As indicated earlier, Title XVIII makes the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, applicable to appeals from decisions of the Secretary denying providers reimburse-

---

4. The PRRB's decision shall, therefore, hereafter be referred to as the decision of the Secretary.

5. The plaintiff also alleged in its complaint that the Secretary's denial of reimbursement for the legal fees and public relations costs constituted "an uncompensated taking of (its) property without due process of law in violation of the Fifth Amendment of (sic) the United States Constitution". (Plaintiff's Complaint, Doc. #1, ¶¶ 32 and 33). The plaintiff has not pursued this claim in its motion for summary judgment and, therefore, we deem the plaintiff to have abandoned this allegation.

For the same reason, we find the plaintiff has abandoned its claim that the Secretary's decision results in a shift of Medicare costs to non-Medicare patients, *i.e.*, cross-subsidization, in vi-

olation of 42 U.S.C. § 1395x(v)(1)(A). Moreover, it is clear that this claim is meritless. *See Sun Towers, Inc. v. Heckler,* 725 F.2d at 328 (statute only refers to the necessary costs of rendering services to Medicare patients; where costs in question fall outside of this category, there can be no cross-subsidization) and *Bond Hospitals, Inc. v. Heckler,* 587 F.Supp. 1268, 1272 (D.D.C.1984), *aff'd.* 762 F.2d 137 (cross-subsidization argument begs the question because "statutory mandate 'merely provides that *reimbursable* costs shall not be shifted to non-Medicare patients'." (Emphasis in original).

Finally, the plaintiff has abandoned its claim that this court possesses jurisdiction over this action under 28 U.S.C. § 1331.

ment under the Medicare program for their claimed costs. *See* 42 U.S.C. § 1395oo(f)(1). Thus, as the plaintiff recognizes, we may only set aside the Secretary's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. 706(2)(A) (West 1983); *see also, Butler County Memorial Hospital v. Heckler, supra.* The burden is on the provider to demonstrate the invalidity of the Secretary's decision and that the costs it claims come within the meaning of "reasonable costs" as defined by the statute and the regulations promulgated thereunder. *See Doctor's Hospital v. Califano, supra.*[6]

▆ We are required to accord extreme deference to the Secretary's decision and, thus, his interpretation of the statute and his regulations. As stated by the Third Circuit Court of Appeals, a court must

... accept the agency's view so long as the 'interpretation is within the range of reasonable meanings that the words of the regulation admit'. (Citations omitted).

Such deference is especially appropriate here, where the Secretary's resolution involves a complex scheme of reimbursement for a sizable number of medical procedures. Legislators and judges are not medical specialists, and for that reason it is necessary that administrative agencies develop and apply medical expertise. Accordingly, Congress described only sparsely the means of assessing reasonable costs owed to Medicare providers, and instead assigned the primary responsibility for such assessments to the Secretary. (Citations omitted). We must be cautious lest we disturb this appropriate allocation of governmental functions.

*Butler County Memorial Hospital,* 780 F.2d at 356. *See also, Sun Towers v. Heckler,* 725 F.2d at 325 (because Secretary's interpretation of reasonable cost is entitled to considerable deference, providers have difficult burden of proving that Secretary's interpretation conflicts with the statutory scheme; thus, agency's decision must be upheld so long as there is a rational basis for the Secretary's interpretation of the statute and regulations) and *American Medical International, Inc. v. Secretary of Health, Education and Welfare,* 466 F.Supp. at 611 (because of expertise of agency, administrative decisions should be given deference; this is especially appropriate when Congress explicitly vests broad discretion in the agency to interpret a statute); *but see, Northwest Hospital, Inc. v. Hospital Service Corp.,* 687 F.2d at 985 (while court is not empowered to overrule the Secretary's interpretation merely because it might not coincide with the court's notion of reasonable cost, deference owed to expert tribunal cannot be allowed to slip into judicial inertia, particularly where: (1) the Medicare statute specifically circumscribes the Secretary's discretion to define reasonable costs by requiring the Secretary to take into account both direct and indirect costs and by prohibiting her from causing costs properly allocable to Medicare patients to be borne by non-Medicare patients and (2) the Secretary has not consistently interpreted the challenged regulation to prohibit reimbursement for the claimed costs); *Forbes Health Systems v. Harris,* 661 F.2d 282, 285 (3d Cir.1981) (while court normally defers to agency's interpretation of its own regulation, the weight of an administrative interpretation will depend upon, *inter alia,* its consistency with earlier and later pronouncements of the agency; thus, court may decline to follow administrative guidelines where they conflict with earlier pronouncements of the agency and the agency does not adequately and rationally explain its change in position); and *Saint Mary of Nazareth Hospital Center*

---

**6.** At least one court has described the question of whether certain costs are "reasonable" within the meaning of 42 U.S.C. § 1395x(v)(1)(A) as a basic question of law. *See American Medical International, Inc. v. Secretary of Health, Education and Welfare,* 466 F.Supp. at 611. It seems to us that this question is more appropriately described as a mixed question of fact and law.

*v. Schweiker,* 718 F.2d 459 (D.C.Cir.1983), and cases cited therein.

The plaintiff argues that the Secretary's decision is not entitled to the great deference urged by counsel for the government. As support for this argument, the plaintiff claims that because this case involves only a challenge to the Secretary's "interpretation" of a regulation, and not a challenge to the validity of the regulation itself, the Secretary's decision is not entitled to deference. The plaintiff further claims, citing *Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250 (3d Cir.1978), that great deference to an agency's decision is inappropriate where a court is not reviewing an agency interpretation set forth in a duly promulgated regulation, but rather an "unofficial" interpretation of a regulation. We find no merit in the plaintiff's arguments.

■ First, plaintiff's counsel appears to have misconstrued the applicable case law regarding the deference due administrative actions. There are a number of forms this deference may take. For example, an aggrieved party may challenge the validity of a regulation promulgated by the agency on the grounds that it is beyond the bounds of the agency's statutory authority. This challenge is perhaps most analogous to a claim that a statute is facially unconstitutional. As just stated, the plaintiff has not mounted a facial challenge to the validity of the regulation involved, *i.e.,* 42 CFR § 405.451. An aggrieved party may also simply challenge the "decision" of the agency in a particular case, arguing that the agency's action misinterprets the statute or the regulation itself. This type of challenge is perhaps most analogous to a claim that a statute is unconstitutional as applied to the aggrieved party under the particular facts of that case. In either case, whether we are reviewing the agency's interpretation of a statute in promulgating a regulation, *i.e.,* when the agency is acting in its legislative capacity, or we are reviewing an agency's application of a regulation, *i.e.,* when the agency is acting in its adjudicatory capacity, we are re-quired, subject to qualification, to accord deference to the agency's action.

■ Second, the plaintiff's reliance upon inapposite authority appears to be due to its perception of the Secretary's decision in this case as an "unofficial interpretation" of 42 CFR 405.451. Stated most simply, the plaintiff's perception is incorrect. An agency, as just stated, may exercise its authority in a number of fashions. The fact that an agency acts in its "judicial" capacity, as opposed to its "legislative" capacity, does not mean that the agency is acting "unofficially". In *Daughters of Miriam Center for the Aged v. Mathews, supra,* the provider challenged the retroactive application of a depreciation recapture regulation. According to the court, the regulation itself did not provide that it should be applied retroactively; rather, retroactive application of the regulation "was mandated solely by an *interpretative* rule found in the Provider Reimbursement Manual". 590 F.2d at 1258. (Emphasis added). *But see, Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d at 1264 (Seitz, J., dissenting). In this case, to the contrary, the Secretary did not rely upon an interpretation of a provision of the Provider Reimbursement Manual or some other informal guideline not promulgated in accordance with the APA. He based his decision solely upon an interpretation of a duly promulgated regulation, *i.e.,* 42 CFR § 405.451. *Cf. Mercy Community Hospital v. Heckler,* 781 F.2d 1552, 1555 (11th Cir.1986), in which the Eleventh Circuit Court of Appeals, in our opinion, similarly misconstrued the Third Circuit's decision in *Daughters of Miriam Center for the Aged v. Mathews, supra; see also, State of New Jersey v. HHS,* 670 F.2d 1262 (3d Cir.1981).

In conclusion, we find we are required to accord great deference to the Secretary's decision and, thus, his interpretation of 42 U.S.C. § 1395x(v)(1)(A) and 42 CFR § 405.-451. At the same time, we are mindful of the Supreme Court's admonition that such deference should not be equated with bestowing "legislative effect" upon the Secre-

tary's action. With these principles in mind, we address the merits of this case.

## IV. *The Merits.*

### A. The Legal Costs.

The Secretary in his findings and conclusions relating to the legal expenses claimed by the plaintiff stated the following:

> The Board finds that the Provider's legal costs are directly related to negotiation, litigation and settlement of disagreements among the non-related parties to a joint venture. The Provider's legal costs are not related to care of its patients for the cost reporting periods in question and are not allowable costs under the provisions of 42 CFR 405.451.
>
> The Board finds that the facts concerning the Provider's legal costs in this case are not significantly different from the facts in PRRB Decision 84–D124. In that decision, the Board found that the legal costs of the defendant (ASHHC) in the same court action were directly related to the dispute between the joint venturers and were not related to the delivery of health care. The Provider in this case has not demonstrated that its legal costs as plaintiff in the court action are unlike those of the defendant or that its costs at issue are related to patient care. Further, the record does not support the Provider's claim that the legal costs to terminate the joint venture were related to patient care because the lawsuit was necessitated by financial instability or serious threats to its ability to deliver health care services under the joint venture arrangements.

Inasmuch as the Provider has not presented evidence in this case to support a change from the Board's decision in PRRB Decision 84–D124 concerning similar legal costs in the same court action, the Board reaffirms its prior decision that the legal costs incurred by the Provider in relation to the termination of the joint venture are not allowable costs under 42 CFR 405.451.

(A.R. 0012).

The plaintiff initially attacks this portion of the Secretary's decision on the ground that his interpretation of 42 CFR § 405.451 as contained in the PRRB's ruling imposes additional restrictive requirements on allowable costs heretofore never imposed upon Medicare providers, *viz.*, that the claimed costs be related to patient care during the cost reporting period in which they are claimed. Unfortunately, counsel for the government has not seen fit to respond to this aspect of the plaintiff's memorandum. Nevertheless, based on our review of the Secretary's decision, we find the plaintiff's contentions to be irrelevant.[7]

The Secretary's statement that, "The Provider's legal costs are not related to care of its patients *for the cost reporting periods in question ...*", appears to have generated the plaintiff's concern as to the exact basis for the Secretary's decision. We believe that when the Secretary's decision is reviewed *in toto*, however, it is clear that the Secretary found that the legal costs claimed by the plaintiff did not relate to the care of Medicare recipients regardless of when any benefit might be recognized by reason of the expenditures. Thus, so long as the Secretary's finding that the

---

7. Counsel for the government themselves appear to have interpreted the Secretary's decision as does the plaintiff. For example, the government in its brief at one point states that:

> ... the question faced during the Provider's audit and the PRRB hearing was whether or not the costs in question related to the care delivered to patients *during the periods ending June 30, 1981 and 1932* (sic).

(Defendant's Motion for Summary Judgment, Doc. # 10, p. 16) (Emphasis added). At another point in its brief, the government states that, "... not one minute of patient services resulted from that dispute and not a single patient was benefitted *during the cost periods in question*". (*Id.* at 15). (Emphasis added). *See also, Id.* at 7. However, the government did appear to recognize in its memorandum in reply to the plaintiff's motion for summary judgment that 42 CFR § 405.451 contains no such restriction when it stated, "Any theoretical connection *to care of future patients* is far too speculatively related to the actual care of Medicare beneficiaries to be reimbursable". (Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. # 15, p. 6). (Emphasis added).

legal costs are not related to patient care during any period is sustainable, even if the Secretary intended to impose a requirement that the expenditures relate to patient care during the period in which they are claimed, a further finding that the legal costs are not related to patient care *during the cost periods in question* would be extraneous and irrelevant.[8]

The plaintiff next attacks the Secretary's decision on the ground that it is inconsistent with his prior actions. The plaintiff cites a plethora of decisions by the Secretary which it claims support its position. We find all are clearly distinguishable from this case. One merits discussion, however.

In *Lutheran General Hospital v. Mutual of Omaha, HCFA Deputy Administrator Decision, affirming* PRRB Dec. No. 82–D82 (1982), Transfer Binder, Medicare & Medicaid Guide (CCH) ¶ 32060 at 10,074, the Deputy Administrator affirmed a decision by the PRRB that the provider was entitled to reimbursement of legal fees it had incurred in withdrawing from a community health program it had developed with a matching funds construction grant from the federal government. The fiscal intermediary had disallowed reimbursement for the legal fees on the ground that the fees were not related to patient care as required under 42 CFR § 405.451(c)(3), which provides in its relevant parts that:

> The determination of reasonable cost of services must be based on cost related to the care of beneficiaries of Title XVIII of the Act. Reasonable cost includes all necessary and proper expenses incurred in rendering services, such as administrative costs, maintenance costs, and premium payments for employer health and pension plans. It includes both direct and indirect costs and normal standby costs. However, where the provider's operating costs include amounts not related to patient care, specifically not reimbursable under the program … such amounts will not be allowable.

42 CFR § 405.451(c)(3). The provider on appeal to the PRRB claimed that the community program was undermining patient care in its existing private mental health clinic, and that by withdrawing from the community program, it enhanced the quality of patient care delivered through its private facility, a claim identical to that asserted by the plaintiff in this case. The PRRB found, and the Deputy Administrator agreed, that the provider had demonstrated that continuing in the community program detracted from the quality of care delivered by the private facility and that by withdrawing from the community program it had improved the quality of care in the private facility. The Deputy Administrator concluded, therefore, that the legal fees incurred in withdrawing from the community program constituted necessary and proper costs since the expenditure enhanced the quality of care delivered by the provider's private mental health program.

The Deputy Administrator and the PRRB in this case, to the contrary, found that the plaintiff had failed to demonstrate that continued participation in the joint venture threatened the financial stability of the plaintiff or its ability to deliver health care services. Thus, assuming the Secretary's factual determination that the plaintiff had failed to demonstrate that continued participation in the joint venture threatened the quality of care it delivered is supported by substantial evidence, this case is factually distinguishable from *Lutheran General Hospital v. Mutual of Omaha, supra.* The final question, therefore, is whether the Secretary's finding is indeed supported by substantial evidence.

█ "Substantial evidence" within the realm of the APA means "such relevant evidence as adequate to support the conclusion reached". *Doctor's Hospital, Inc. v. Califano,* 459 F.Supp. at 205. It means something less than the weight of the evidence. Thus, the possibility of drawing two inconsistent inferences from the same

---

8. In *Doctor's Hospital, Inc. v. Califano,* 459 F.Supp. at 207, the district court upheld the PRRB's interpretation of 42 U.S.C. § 1395x(v)(1)(A) and the pertinent regulations thereunder as requiring that claimed costs pertain to the cost reporting periods in question.

evidence does not prevent an administrative agency's decision from being supported by substantial evidence. *Id.*

■ Based on our examination of the administrative record, we conclude that the Secretary's explicit determination that the plaintiff had failed to prove that its continued participation in the joint venture threatened the quality of care it could deliver and his implicit determination that withdrawal from the joint venture did not improve the quality of such care is supported by substantial record evidence. While we might not have made the same findings as the Secretary, we cannot say that no reasonable individual could draw the inferences from the facts in the record which the Secretary chose to draw. As just stated, where two inconsistent inferences may be drawn from the record evidence, we must defer to the inference drawn by the agency.

■ In sum, as to the Secretary's disallowance of the legal costs claimed by the plaintiff, we find that the Secretary's decision is: (1) supported by substantial evidence, (2) not arbitrary or capricious, and (3) in accordance with Title XVIII and the regulations promulgated thereunder.[9]

## B. The Advertising/Public Relations Costs.

The plaintiff next challenges the Secretary's decision that it was not entitled to reimbursement for the public relations costs it incurred in purchasing advertising space in a local newspaper to present its views regarding the dissolution of the joint venture. The Secretary on this point in his findings and conclusions stated the following:

> The Board finds that the advertising costs are directly related to the dispute among the joint venturers and are not allowable costs related to patient care under 42 CFR 405.451. The Provider's witnesses testified that the advertising costs were part of the legal strategy for securing a favorable resolution of the joint venture litigation (Tr. 67, 210, 223–226, 254–255, 268, 280–281). Further, testimony indicated that the advertising

---

**9.** Counsel for the government suggests that this Court should analyze the two issues involved in this case by asking "why" were the legal and public relations costs incurred by the plaintiff. (*See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Further Support of Defendant's Motion for Summary Judgment, Doc. #15, p. 3). The defendant refers to this as the "primary purpose" method of determining whether costs are properly reimbursable under the Medicare program. The government asserts that when one asks this question, the answer in this case is that the plaintiff incurred these expenses "to expand the hospitals (sic) business and correct a poor business decision, not to improve the care provided to the hospital's patients". *Id.*

The defendant erroneously suggests that this method has been utilized by several courts to determine whether certain costs reasonably relate to patient care. (*Id.* at fn. 1). In fact, this method has been used by the Secretary, and the courts in those cases cited by the defendant have merely affirmed the Secretary's methodology as a reasonable and rational exercise of his or her statutory powers. *See Humana, Inc. v. Heckler,* 758 F.2d 696, 700 (D.C.Cir.1985) ("... certain indirect costs become too attenuated to be regarded as for the provision of medical services. To make these distinctions, the Secretary employs the primary purpose test, de-

termining the primary purpose of a given activity and its associated cost"); *Sun Towers, Inc. v. Heckler,* 725 F.2d at 315 (In making a determination that stock maintenance expenses were only tangentially related to the delivery of health services, the Secretary focused on the primary purpose underlying each cost to determine whether there exists a sufficient nexus to patient care.); and *American Medical International, Inc. v. HEW,* 466 F.Supp. at 615 ("... the 'primary purpose' test used by the Secretary is reasonable and justifies the difference in treatment between non-profit and profit corporations").

Further, we may only base our review on the Secretary's *stated* findings and conclusions. Here, we see no indication, explicit or implicit, in the Secretary's decision that he utilized this methodology in determining that the legal costs claimed by the plaintiff were not sufficiently related to the delivery of health care services. Thus, while perhaps true, we draw nothing from the government's argument that the plaintiff's primary purpose in withdrawing from the joint venture was to expand its business and correct a poor business decision, for which reimbursement is improper, rather than to improve the care it already delivered, for which reimbursement is proper. *See Memorial Hospital of Carbondale v. Heckler,* 760 F.2d 771 (7th Cir.1985).

costs were related to the lawsuit (Tr. 9) and as such are more like legal costs than advertising costs.

The Board finds that its conclusions and findings on issue 1 above concerning the Provider's legal costs apply equally to the Provider's advertising costs in this case. Accordingly, the Board finds that the Provider's advertising costs are not related to the delivery of health care services for the cost years in question and are not allowable under 42 CFR 405.-451.

The Board concludes that the primary purpose of the Provider's advertising was to aid in the joint venture litigation. The Board finds that the Provider has not demonstrated that its advertising was primarily concerned with presenting a good public image. Therefore, the Provider's advertising costs are not allocable under the provisions of Section 2136ff (HCFA Pub. 15–1).

(A.R. 0013).

██ The Secretary in this part of his decision did rely on the primary purpose test in determining whether the plaintiff was entitled to reimbursement for its advertising expenses related to the termination of the joint venture. He, of course, found that the advertisements' primary purpose was not the presentation of a good public image, which he has determined to be a reimbursable expense in certain instances, but rather was to aid in the joint venture litigation. He concluded, therefore, by syllogism, that the advertising costs could not be related to the delivery of health care services, with his major premise being that the legal costs incurred in the joint venture litigation were not sufficiently related to patient care and his minor premise being that the advertisements were aimed at aiding in the joint venture litigation.[10]

The plaintiff, citing, *inter alia, Provider Appeal Decision (Blue Cross Association)*, No. 00–78–7, Medicare & Medicaid Guide (CCH) ¶ 69,157 at 10,149, once again challenges the Secretary's decision on this point as being inconsistent with prior adjudications. In *Provider Appeal Decision (Blue Cross Association)*, the provider claimed as start-up costs expenses it had incurred in conducting a public relations campaign to counter that started against it by an existing county-operated hospital. The existing provider charged that the new physician-owned, proprietary hospital would deprive it of all but indigent patients, which would result in an increased tax burden on the county taxpayers. Recognizing that advertising is not a reimbursable expense where it is designed primarily to increase patient utilization, the Hearing officer concluded that that was not the design of the advertising in that case. He found that the documentation in the record supported the provider's claim that the public relations campaign was aimed at countering a poor public image and creating a positive one.

██ The Secretary in this case, however, found that the plaintiff had failed to demonstrate that the primary purpose of the advertising was the presentation of a good public image. Thus, we find, once again, that the case the plaintiff claims to be inconsistent with the Secretary's decision in the instant action is distinguishable from the case *sub judice*. More importantly, we find and conclude that the Secretary's decision on this point is supported by substantial evidence. While perhaps oversimplifying the matter, there are two inferences which the Secretary could have drawn from the evidence before him, *viz.*, that the advertising at issue was aimed at presenting a good public image or that it was not. As stated twice already, where more than one inference may be drawn

---

**10.** Once again, the defendant cites a plethora of reasons justifying the Secretary's decision. For example, counsel argues that the plaintiff is not entitled to reimbursement for the advertising expenses because the advertisements were designed to increase patient utilization. No

where, though, in the Secretary's decision on this point or with regard to the legal fees did he make such a finding. As stated earlier, we may not rely on *post hoc* rationalizations of an agency's action to validate that action.

from a given set of facts, a court *must* defer to the inference drawn by the agency, even though the court itself might have reached a different conclusion. While one might here conclude that the primary purpose of the plaintiff's advertising was the presentation of a good public image, we cannot say that this is the only inference that a reasonable person could draw from the record. Therefore, we must accept the inference drawn by the Secretary. *See Gosman v. United States,* 573 F.2d 31 (Ct.Cl.1978) (advertising expenditures are not reimbursable where they are only tangentially or speculatively related to the actual care of Medicare beneficiaries).

## V. *Conclusion.*

In conclusion, we find that the Secretary's decision conforms to the relevant statutory and regulatory provisions, is not arbitrary or capricious and is supported by substantial record evidence. As noted by several fellow courts, classification in the area of social welfare presents a difficult task at best, a task not subject to mathematical nicety. *See American Medical International, Inc. v. HEW, supra,* and cases cited therein. The statutes and regulations which the Secretary of Health and Human Services administers with regard to the Medicare program require him to draw lines which result in what some perceive as a rough accommodation between the Secretary's dual responsibilities in this area of fulfilling Congress's mandate as to the Medicare program while at the same time administering the program in a fiscally responsible manner. We do not believe that the record before us allows us to interfere with that function as discharged in this case.

11. Ironically, it appears that while the plaintiff is not entitled to reimbursement for the legal and advertising expenses related to the joint venture litigation, it may very well be entitled to reimbursement for the legal fees it incurred in contesting the disallowance of said costs. *See e.g., Good Luck Nursing, Inc. v. Harris,* 636 F.2d 572, 578 (D.D.C.1980) ("A provider that disagrees in good faith with the Government over the existence of an overpayment or underpay-

For the reasons stated above, we will grant the defendant's motion for summary judgment and deny the plaintiff's motion. An appropriate order follows.[11]

ment is provided administrative and judicial procedures for the resolution of the dispute. The legal and accounting expenses associated with such litigation are part of the cost of participating in the Medicare program, and providers are entitled to reimbursement for those costs in accordance with the appropriate reimbursement formula".) We note this possibility only as a point of interest and express no opinion on the propriety of such a claim.